IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

UNITED STATES OF AMERICA,      )
    Plaintiff,               )
                    )
    vs.                      ) CRIMINAL CASE NO. CCB-15-544
                    )
WILLIAM HENRY STEINHAUS, IV, )
    Defendant.               )
_____)


Wednesday, March 15, 2017
Courtroom 7D
Baltimore, Maryland


BEFORE:   THE HONORABLE CATHERINE C. BLAKE, JUDGE


SENTENCING - VOLUME I


For the Plaintiff:

Zachary Myers, Esquire
Assistant United States Attorney

For the Defendant:

Michael T. Citaramanis, Esquire
Assistant Federal Public Defender

Also Present:

Special Agent Matthew Bileck, FBI
_____


Reported by:

Douglas J. Zweizig, RDR, CRR
Federal Official Court Reporter
101 W. Lombard Street, 4th Floor
Baltimore, Maryland  21201

*Douglas J. Zweizig, RDR, CRR - Federal Official Court Reporter*

P R O C E E D I N G S

(2:38 p.m.)

THE COURT:  Good afternoon, everybody.  You can be seated, please.

Do you want to call the case, Mr. Myers.

MR. MYERS:  Good afternoon, Your Honor.  Thank you.

I'm here to call the matter of United States of America versus William Henry Steinhaus, IV.  This is Criminal No. CCB-15-544.  I'm Assistant U.S. Attorney Zachary Myers, here on behalf of the Government, along with Special Agent Matthew Bileck of the FBI, for the first portion of this afternoon's sentencing hearing.

THE COURT:  All right.  Thank you.

MR. CITARAMANIS:  And good afternoon, Your Honor.  Michael Citaramanis with the Federal Public Defender's Office, appearing with Mr. Steinhaus.

THE COURT:  All right.  Thank you.

All right.  And my understanding is that we're meeting here this afternoon, although the sentencing primarily is tomorrow morning, because Mr. Myers wanted to have the opportunity for live testimony from Dr. Kraft.

MR. MYERS:  That's correct, Your Honor.

THE COURT:  So how are we proceeding with that?

MR. CITARAMANIS:  Your Honor, we are ready to proceed.  Dr. Kraft is in the courtroom.

Preliminarily, though, there are a couple things I guess I wanted to state for the record.

**THE COURT:**  Okay.

**MR. CITARAMANIS:**  First off, although I know the Government has taken the position that, you know, they feel the burden is on the defense to establish under <u>Daubert</u> that somehow this testimony is admissible or Dr. Kraft's report and conclusions are, I think we all know that all the time psychologists and psychiatrists are called upon to do examinations and evaluations for purposes of court.

**THE COURT:**  Sure.

**MR. CITARAMANIS:**  I think the Government's issue here is just disagreeing with his conclusions, not really that this is a <u>Daubert</u> type of issue.

Second, Your Honor, in discussing things with Dr. Kraft, and specifically after the status or telephone conference we had last week where the Government indicated its interest in possibly using photographs, and I think where we came down on that was the Government indicated that it would reserve on that and perhaps just use the descriptions of specific photographs in their examination of Dr. Kraft.

But I wanted to let the Court know that Dr. Kraft has indicated that he would be highly offended if he were to be shown the photographs.  And he would -- certainly his preference is not to be shown the photographs.

I frankly don't think it's necessary, considering that there are graphic descriptions of what's depicted in the photographs contained in discovery and the indictment in this case.

But if it comes down to it that the Government, indeed, chooses to want to show him copies of the photographs, I ask that we first perhaps approach the bench at that point.

**THE COURT:**  Sure.

**MR. CITARAMANIS:**  And there might be, again, I think, a middle ground.

And I say that not only for Dr. Kraft, but I think for anybody else in the courtroom.  I know it wasn't the intention of the Government to show any photographs on the screens, and those would only be privately displayed to the doctor and perhaps the Court and myself.  But I think any kind of re-publication of the photographs in any manner, I think it would be best if we could try to avoid that.

Finally, Your Honor, with respect to the examination by the Government, I know it's a little unusual circumstance here where the Government's calling a defense expert.  And under Rule 611 of the Federal Rules of Evidence, it is the -- typically direct testimony is to proceed by nonleading questions.  There's exceptions, I understand, including where there's a hostile witness or a person identified with the defendant or a party specifically.

I'm not sure whether they're there yet.  So I would just -- you know, if the Court's inclined to allow the Government and give them leeway in doing that, I understand.

But I think until Dr. Kraft is shown to be a hostile witness, I don't think it would necessarily be in order to -- the Government proceed other than nonleading questions.  So . . .

**THE COURT:**  All right.  Thank you.

Mr. Myers?

**MR. MYERS:**  Your Honor, before I call Mr. Kraft up, I guess just two matters I wanted to bring to the Court's attention.

The first is, as I think the Court is well aware, that at a sentencing proceeding, the Federal Rules of Evidence do not apply.

And the issue that I'm trying to present and I think in the conference what I referred to it as sort of Daubert-like is because it's not a question as to whether the report is admissible or should be stricken.  There's no jury to have it shown to.

The question is:  Should the Court rely on it or give it any weight in considering all the factors that the Court is required to consider under Section 3553(a)?  I think that as a review of the defense sentencing submission shows, that much of the defense argument relies on the conclusions in this report.

*Douglas J. Zweizig, RDR, CRR - Federal Official Court Reporter*

And that's why I think it's very important to have the doctor's testimony here today and, you know, setting aside any objections to the form of the questions as they come across as the testimony's taken, that it's important for the Government to have an opportunity to hear from the expert who's written this, frankly, extraordinary report with some fairly extraordinary, and in the Government's view completely unsupported, conclusions in order to put that in the proper context as opposed to the Government just arguing against the paper as the Government did in its sentencing submission without giving the proponent of this information a chance to explain how he arrived at these conclusions and the methods he took to get there.

And that's why the Government has found it appropriate for the expert to be brought in here today.

**THE COURT:**  Well, I understand that, Mr. Myers, and I did give you this opportunity to ask some questions.  And I understand that it goes not to Dr. Kraft's qualifications to give these opinions, but more to your argument as to what weight I should give the report.

As I think I indicated on the phone, I think -- and I'm not going to make a final ruling -- I think it is extremely unlikely that I would find it necessary for Dr. Kraft, if that's not germane in his opinion to his report, to look at the actual photographs, but we'll see where we get to on that.

MR. MYERS:  I highly doubt that that would become necessary, Your Honor.

THE COURT:  Okay.  All right.  Then we'll begin with Dr. Kraft.

Thank you, sir.  If you could step up here.

THE WITNESS:  Good afternoon.

THE COURT:  Good afternoon.

THE CLERK:  Please raise your right hand.

CHRIS KRAFT, Ph.D., SWORN.

THE CLERK:  Please be seated.

Please speak directly into the microphone.  State your full name for the record and spell your last name, please.

THE WITNESS:  Chris Kraft, C-H-R-I-S, K-R-A-F-T.

THE COURT:  Thank you.

MR. MYERS:  Just a moment, Your Honor, please.

(Counsel conferred.)

MR. MYERS:  Your Honor, may I approach the witness?

THE COURT:  Sure.

MR. MYERS:  (Handing.)

DIRECT EXAMINATION

BY MR. MYERS:

Q.   Dr. Kraft, are you employed, sir?

A.   Yes, I am.

Q.   And how are you employed?

A.   I am employed by Johns Hopkins University.

**Q.** And what is your assignment or responsibility within Johns Hopkins University?

**A.** I have a couple different roles with the university. One is an adjunct faculty member at the university where I teach three courses in human sexuality.

And then my other position is the clinical director for the sexual behaviors consultation unit, which is in the department of psychiatry at the main hospital.

**Q.** And as part of your work and your training leading up to now, have you received training not on sexuality in general or treatment of sex offenders in general, but specifically on the conducting of risk assessments for child sex offenders?

**A.** I have done risk assessments in my career, yes.

**Q.** And typically, when you -- when you conduct a risk assessment, do you rely on the source of information that you relied on for -- to produce the report which is in the binder as Government's Exhibit 1?

**A.** Yes.

**Q.** And I want to turn you to the front page of that report that, according to your report, the sources of information that you relied on were the indictment, which is included as Exhibit 2 in your binder; the statement of charges from Frederick County, which is included as Exhibit 3; various FBI reports dated between December of 2014, February of 2015; a federal search warrant which is included as Exhibit 4; medical

records that you obtained from the Frederick Detention Center;

various Kik messages, and I've included in Exhibit 5 redacted

copies of so no images are displayed of Kik messages that were

provided to the defense in discovery and I assume were provided

to you in your preparation; as well as a four-hour interview of

the defendant and a one-hour interview of the defendant's

mother.

Is that all correct?

A.    Yes.

Q.    Were there any other sources of information other than

your research and prior knowledge and experience?  But in terms

of sort of facts that you were taking in, were there any other

sources of information that you obtained?

A.    Not -- no, not specific to this case.

Q.    Did you review any chat logs beyond the ones that were

provided to the defense in discovery?  Did you make a request

to see any additional evidence?

A.    I just wanted to make sure I had gotten everything.  And

this was all I was told that there was available for me to see,

so I haven't seen anything else.

Q.    And I know we've talked about it some already, but you

have not seen the images themselves that were produced by the

defendant, have you?

A.    No.

Q.    And you have not seen the images that he did not produce

but, in fact, possessed at the time that his devices were seized, have you?

A.    No, I haven't seen any of the images of any kind on his -- on his devices.

Q.    Would you consider the content of the images of an individual's collection of pornography, especially child pornography, to be relevant to your evaluation as to what his sexual interests actually were?

A.    I'm more interested in the description of the images, and I was able to get that.  But one thing that was missing typically in this is the full scope of all of the pornographic imagery on the computer.

Usually what is only described is of the imagery that's of illegal or concern.  I don't get the other imagery and descriptions in the volume of adult, let's say, pornography or things that wouldn't be considered illegal.

So I don't usually get all of that, because that's not usually what the investigators focus on.

Q.    Did you ask for that?

A.    I did, yeah.

Q.    You asked defense counsel to see additional information?

A.    Yeah.  If there was anything additional, could I see all of the imagery -- get a description of what all the imagery is, how much of it's -- what age groups, what types, 'cause you have to look at the full scope of what somebody is involved

with sexually online.

Q.   And did you make this request of state or federal defense counsel, do you know?

A.   My --

Q.   Was it Mr. Citaramanis who is sitting here in the court --

A.   Yeah.

Q.   -- or was it a different attorney?

A.   No.  It was him.

Q.   Okay.  Did you talk to the victim's mother at any point?

A.   No, I didn't.

Q.   So in terms of talking to human beings, the only people you've talked to, other than defense counsel, have been the defendant and the defendant's mother?

A.   That's correct.

Q.   Okay.  Now, you mentioned that you've done risk assessments of child sex offenders in the past.  Am I recalling that correctly?

A.   That's correct.

Q.   And are you aware of any diagnostic tools or tests or actuarial tools that are used by practitioners in the field in order to evaluate risk of recidivism of child sex offenders?

     MR. CITARAMANIS:  Your Honor, if I might object at this point.  I think that the scope of his -- the doctor's report, he basically makes a diagnosis.  And I think that's what the Government is taking issue with here.

I don't think that Dr. Kraft has specifically -- was not called upon to do a risk assessment analysis, which is going to be a bit different than an overall diagnosis of any mental or other disorder.

**MR. MYERS:**  Your Honor --

**THE COURT:**  Yes.

**MR. MYERS:**  -- with all due respect to defense counsel, if you look at the second paragraph on Page 6, the first sentence --

**THE COURT:**  That's what I was looking at.  It may or may not, and the doctor can certainly clarify whether it's what he would consider a formal risk assessment or not, but he certainly does offer an opinion about whether Mr. Steinhaus poses a risk.

**MR. CITARAMANIS:**  But I just think it should be clarified, Your Honor, that that was not the -- certainly the primary focus of it and that -- I understand that's where Government counsel may be going with this, but I don't think that -- I mean, I'll see how much of the examination goes into that specific area.

But I think it just should be kept in mind that the primary focus of this report was to do an overall forensic evaluation to determine what disorder, if any, the --

**THE COURT:**  Sure.  Why don't you come up to the bench for a minute, both of you.

(Bench conference on the record:

**THE COURT:**  So part of the issue here may be -- I mean, if you're not -- because obviously you are not asking for a probationary --

**MR. CITARAMANIS:**  I know.  I know that it's a part of the report.  And I understand that, Your Honor, but I'm now -- I'm not -- it's not a formal objection.

But I think if his whole bent here is going after risk assessment, you know, that's also a very -- I mean, it's very difficult for any psychologist or psychiatrist to, you know, with a certain level of -- I mean, risk assessment is just -- it's a difficult area.  And --

**THE COURT:**  Sure.

**MR. CITARAMANIS:**  -- there's literature that, you know, extensively discusses how you've got to be very careful in terms of using risk assessment tools and other type of tests that the Government is kind of going to be bringing up here.

So, you know, but -- you know --

**MR. MYERS:**  Your Honor, I just want to be clear that the Government isn't adopting any particular tools or methods. I'm trying to explore what he did in arriving at his conclusion, which however the defense wants to couch it, you can read throughout the defense sentencing memorandum is relying on this report to convince the Court that this defendant doesn't pose a danger to the public.

MR. CITARAMANIS:  But we're not asking -- like, this is not a probationary case that we're asking for here.

MR. MYERS:  The request may be different, but the point is the same.

THE COURT:  Right.  Where I was going to go -- I mean, if you don't, in fact, want me to consider what he says about risk, then maybe we don't need to do this.  But if you do, I think Mr. Myers is entitled to clarify what underlies that opinion.

And you can certainly have a -- whether it's a redirect or whatever it is, an opportunity to clarify the focus of his report afterwards.

MR. CITARAMANIS:  No.  I'll let Mr. Myers do his examination, and I'll see what I need to follow up with in terms of Dr. Kraft.

THE COURT:  Good.

MR. MYERS:  Thank you, Your Honor.)

(Bench conference concluded.)

BY MR. MYERS:

Q.   So, again, Dr. Kraft, are you aware of diagnostic tools or tests used by practitioners in the area of risk assessment for sex offenders in order to evaluate the potential risk of those offenders to the public?

A.   I am aware of some of them, yes.

Q.   For example, the Static-99 or the Static-2002?

**A.**    Uh-huh.

**Q.**    And have you used those tools or tools like those in the past in conducting assessments as you testified of the risk that -- posed by other child sex offenders?

**A.**    No.

**Q.**    And if you're aware of these tests, is there a specific reason, based on your training and experience or professional judgment, that you determined not to use these tests?

**A.**    They lack adequate reliability.

**Q.**    Okay.  So do you believe that the sources of information that you've chosen to rely on, the essentially core paperwork and talking to the defendant, that -- and the defendant's mother that that provides sufficient, reliable information for you to form an opinion?

**A.**    Yes.

**Q.**    Okay.  In prior risk evaluations, have you ever found that a patient was, in fact, a pedophile?

**A.**    Yes.

**Q.**    And have you ever found that a patient was likely to re-offend?

**A.**    Yes.

**Q.**    Without getting into any specifics of prior cases, what sorts of information have you required in order to make an opinion that someone is, in fact, a pedophile?

**A.**    Their history.

**Q.**   And by "their history," what do you mean?

**A.**   Prior offenses.

**Q.**   Are you aware of -- and I realize the numbers are all over the map -- but are you aware of the general proposition that sex offenses, and particularly sex offenses against children, are among the most under-reported and under-convicted crimes that we face?

**A.**   I'm aware of that.

**Q.**   So based on that, do you think that just prior criminal conviction history is sufficient to determine --

**A.**   That's not all that I use.  I take a history from the individual, his full sexual relationship history.  I try to get as much corroborating information from family members, if I have access to them, about their observations of the individual around particularly young people.

I'm particularly interested in their pornographic history and use and what's significant in that as far as what's appealing to them.

So there's a variety of different sources that I use other than prior convictions.

**Q.**   Has an individual who's talked to you ever lied to you about their sexual offenses or sexual history?

**A.**   I cannot tell truth and honesty when I talk with people. I wish we all could know that in this field.

**Q.**   So do you take what a defendant says who's pending

criminal sentencing at face value?

**A.**   I have no choice.  That combined with other corroborating information is all I can go with.  My role isn't to prove or disprove truth.  My role is to assess the best that I can under the circumstances that I'm in.

And, yes, anybody who's in the system of being accused is probably going to have a hard time giving me full details.  I'm well aware of that.  So I have to do the best that I can.  And it is a huge limitation of this work.

**Q.**   So when we were talking about the different sources of information, one source of information that you did not cite as being one that you relied upon in arriving at your report is the stipulated factual basis of the parties in which the defendant signed a written statement as to his conduct in this case.

Have you had a chance to review that, Dr. Kraft?

**A.**   Could you be more specific?  I'm not sure what you're referring to.

**Q.**   If you look at Tab 6 in your binder, this is a copy of a portion of the plea agreement that was filed in this case. Specifically it's the facts that the parties have agreed are not the full scope of the offense, but the facts that underlie the basis for the defendant to enter a plea of guilty.

**A.**   Uh-huh.

**Q.**   Have you seen this document before?

**A.**   Uh-huh.

     **THE COURT:**  I'm sorry.  You need to say "yes" or "no" --

     **THE WITNESS:**  Yes.  I'm sorry.  Yes.

     **THE COURT:**  -- if you don't mind, for the --

**BY MR. MYERS:**

**Q.**   So although it wasn't listed in your report, you also relied on the facts that the defendant admitted in the course of his plea agreement?

     **MR. CITARAMANIS:**  Well, Your Honor, if we could clarify for the record, I believe the plea agreement in this case was arrived at and filed with this Court in December of 2016; and Dr. Kraft's report/evaluation was done -- I think that it's dated in August of 2016.  So at that time we didn't have that statement of facts available.

**BY MR. MYERS:**

**Q.**   Well, then, Dr. Kraft, was any additional information -- after you finished this comprehensive evaluation dated August 30th, 2016, were you provided with any additional information by counsel for the defendant --

**A.**   No, I wasn't.

**Q.**   -- following that?

So given the date of this document, you haven't had a chance to do that?

**A.**   Then I wouldn't have seen this.  It looks similar to other

ones, but --

Q.   It does.  All the typeface and everything looks similar, so I understand how you could get confused with that.  That's not -- I was not attempting to trip you up there.

THE COURT:  Would this be fairly similar to the chats --

MR. MYERS:  It would, Your Honor.

THE COURT:  -- that were --

MR. MYERS:  The information between the search warrant, the statement of charges, the indictment itself, there isn't a lot that isn't in those other sources.

THE COURT:  Right.

MR. MYERS:  So . . .

BY MR. MYERS:

Q.   I'll move on to some of the facts that you found in your report or reported were reported to you.

If you turn to Page 1 of your report, in the section that says "history of the present problem," you write that in December 2014, Mr. Steinhaus began a chat interaction through a phone application called Kik with an undercover detective and, specifically, that he was looking to find underage pornography by interacting with other members of the Kik community who might be willing to share underage pornography with him.

Now, are you familiar with the Kik application, Dr. Kraft?

A.   Yes, I am.

*KRAFT, Ph.D. - DIRECT*

**Q.**   And do you understand that it's a messaging application?

**A.**   Yes.

**Q.**   Do you understand that as such an application, a user needs to have a user name to choose to communicate with, that it's not a bulletin board or a chatroom where people are just there and available to talk to?

**A.**   Uh-huh.  Yes.

**Q.**   So I'd like to turn you to Exhibit 4, which is the federal search warrant that you reviewed in arriving at your report. And specifically Page 6, starting at Paragraph 10.

And in Paragraphs 10 through 13 -- or, sorry, Paragraphs 10 through 14, the affiant describes a series of e-mail messages between the undercover officer and the defendant.

Are you familiar with this?

**A.**   Yes.

**Q.**   And are you familiar that these predated any of the Kik chats?  And I know I don't expect you to have encyclopedic knowledge of the facts that we've been living with in this case, so I'm not sort of nitpicking the start of the interaction in terms of what application.

**A.**   Yeah.

**Q.**   But I wanted to ask you about the important point of the genesis of his contact with the undercover officer.

Now, have you had a chance to read Paragraph 10?

**A.**   Yes.   Well, I'm sort of reading it now.

**Q.**   Is it fair to summarize that in saying that the undercover officer posted an ad on craigslist [reading]:   Seeking perv taboo dads who were into fam and the more pervy things in life, taboo, et cetera?

**A.**   Yeah, yeah.

**Q.**   And that that was posted prior to November 8th --

**A.**   Right.

**Q.**   -- 2014, according to the affiant?

**A.**   Uh-huh.

**Q.**   And that a month later, as reflected in Paragraph 11, individual utilized, which is later admitted in the other documents to be Steinhaus himself, that the defendant replied by e-mail to that ad from November and in it said, We talked a few weeks ago, but my account got messed up.   32 from Frederick.

Now, you're familiar with craigslist to some degree, aren't you?

**A.**   Yes.

**Q.**   And that when an ad is posted, the newest ad is posted at the top of the list of whatever section you're in?

**A.**   Yes.

**Q.**   So the likelihood of a user logging into craigslist and seeing a month-old ad in any section with any significant traffic, would you say that's very high?

**A.**   I don't know.  I don't know how long postings stay on craigslist.  That's not an area that I'm very knowledgeable in.

**Q.**   But -- so based on the defendant's words to the undercover, he had been in contact with him a few weeks prior.  Of course, the ad itself had been posted a few weeks prior.

**A.**   Uh-huh.

**Q.**   So based on his statement and the fact that the ad had been previously posted, does that give you reason to believe that maybe the defendant had been engaged in this course of conduct beyond the December 7th through 9th time frame?

**A.**   It looks like it could be maybe more like a month.

**Q.**   And do you see that in -- in those -- in that course of e-mails, if you look at Paragraph 13, that in response to the -- in response to just a couple of e-mails, the defendant sends an image of his daughter naked or her naked buttocks with her shirt pulled up to mid torso and pants pulled down -- pants and diaper pulled down to mid calf, including the buttocks region, and sent this to the undercover in response to an e-mail asking "any play on pics?"

     Now, throughout your report, you characterized Mr. Steinhaus's activity as seeking out child pornography from other people.  But in this course of e-mails, he's sending child pornography just in response to a question as to whether he's playing with the daughter that he's referring to.

     Does that coincide with the facts as you found them in

your report?

A.   I think it's really common for people to try to interact with others online with a -- with a mode -- with an agenda. And I really feel that Steinhaus's agenda was to get attention from somebody who might also have underage pornography and then facilitate sharing mutually of that material, which does show in the Kik conversations did happen after this.

Q.   And you're right that they did move to Kik in those conversations, as shown in the affidavit and in all the other evidence.

And in your report, in line with what you just testified, you also say, in the areas spanning Pages 1 and 2 of your report, that the defendant began sending sexual images of his 2-year-old daughter with the hope of receiving similar images from the UC, who claimed to have a daughter the same age.

Now, when you're saying that "with the hope of receiving similar images," what's your source for that information?

A.   That's what he told me.

Q.   Okay.  Now, in your review of the chat logs, did you see the defendant making comments to any of the users whose chats were provided to the defense raising concerns about not wanting to get caught?

A.   Yeah.  There were a variety of things that were said. But, again, I think it's all said in a way to heighten the excitement and the drama that he was trying to create with

these interactions.

Q.   I'd like to turn you to the Kik chats themselves.  They're at Tab 5.  And we're not going to read all of this, but I do think there's some important information in here to put your report into context.

And could you turn to the page labeled -- should be the second page, but the page labeled EV Kik 003.

A.   Uh-huh.

Q.   And as you're aware, "Naughty Daddy" is the moniker chosen by the defendant?

A.   Uh-huh.

Q.   And "John Paul" is the moniker used by the undercover officer?

A.   (No response.)

THE COURT:  I think that's a "yes."

THE WITNESS:  I'm sorry.  Yes.  I was looking at it.

BY MR. MYERS:

Q.   And all these times are GMT/UTC, so don't worry about the actual time in terms of real world.

But at the bottom of the chats on this page, you see -- do you see where it says [reading]:  "Naughty Daddy" asks how old?

A.   Uh-huh.

THE COURT REPORTER:  I'm sorry, Doctor.  You have to say "yes" or "no."

THE WITNESS:  Yes.  Yes.  I'm sorry.

BY MR. MYERS:

Q.   And in response to the undercover claiming to have an 8-year-old, what does Mr. Steinhaus say?  The last chat on the page.

A.   The very bottom of the page, he says "lucky."

Q.   And could you please read Mr. Comment's -- Mr. Steinhaus's next comment at the top of the next page.

A.   It's kind of hard to read that sentence [reading]:  How she still let J lick without telling.

Q.   And could the J be a typo for you U, perhaps?

A.   Yeah, yeah.

Q.   But it indicates a generalized concern right off the bat on page, you know, 3 of these chats with this officer of the undercover -- wondering about how the undercover keeps his daughter, who is 8, from telling.

     And if you go to the middle of this page, Steinhaus continues along this vein within the same minute, asking [reading]:  How did you get we into it?

     Probably some texting issues there, but right after that [reading]:  I want to so bad but afraid.

     Now, is that a comment to you that indicates he's seeking out images from this other guy?

A.   Those are comments that I see when I've evaluated many of these interactions, and it's usually through Kik, of the fantasy role-play that goes on between two people online.

It's -- you know, it's not reality.  It's in order to get attention and create excitement and fantasy.

So, yeah, I can see what you're getting at.  But, you know, there's a big difference between what people fantasize and do online and what they do in real life.

Q.   Did Mr. Steinhaus take pictures of his daughter in real life?

A.   I don't understand what that has to do with what I just said.

Q.   You said there's a difference between what people say online and say in real life, and I'm asking you if you were aware that Mr. Steinhaus took pictures of his daughter in real life, not online.

A.   Yes.  That's obvious he crossed the line and took pictures of his daughter.

Q.   Are you aware that these pictures included him putting his erect penis on his daughter?

A.   I am aware of that.

Q.   Are you aware that they included him putting his daughter's hand on his erect penis?

A.   I read that.

Q.   And, nevertheless, you arrived at a conclusion that the defendant is not sexually aroused by children, has not felt sexual feelings for his daughter or any other minor children?  Can you square those two things?

**A.**   Yeah.   Let me give you some information about that.

There are plenty of people who have inappropriate contact with minors who are motivated for reasons other than sexual arousal or attraction.   In fact, statistically, most family members, fathers having contact with their own biological offspring, having arousal is very, very rare.   Most of them are motivated for other reasons beyond arousal.

**Q.**   Would --

**A.**   Now, if you're going to stage photographs to get attention by somebody to get photographs in return, unfortunately he used his daughter as a prop, including getting himself erect, which we don't know how he got himself erect.   That could have been done in many other ways separate from looking at or having contact with his daughter.

So the arousal and the production of that imagery does not have to indicate to me that he's specifically sexually aroused by his daughter.

**Q.**   Can you turn to Page 17 of the Kik chats, the bottom two comments.

And please read what the defendant said to the undercover officer.

**MR. CITARAMANIS:**   What page was that?   I'm sorry, counsel.

**MR. MYERS:**   17.

**THE WITNESS:**   I'm not sure which part you want me to

read.

BY MR. MYERS:

Q.   Starting with "a lot" --

          THE COURT:  If you wanted the "a lot of guys like younger teens," I've just read it.  That one?

          MR. MYERS:  Yes.

          THE COURT:  Okay.  It's read.

          THE WITNESS:  Okay.

BY MR. MYERS:

Q.   So the defendant himself is saying in his chats, when he doesn't know that he's being charged with anything criminally, when he doesn't know that anyone's looking over his shoulder, when he thinks that he has this safety of Internet and anonymity, he says [reading]:  A lot of guys like younger teens.  I'm sure there are some f'ed up ones -- without hyphenating that -- like us that want their little girls.

     Why shouldn't we take him at his word?

A.   Because it's a fantasy role-play interaction.

Q.   Was it fantasy role-play when he then posed his daughter?

A.   Those are two separate events --

          THE COURT:  You've asked that -- you've asked that before, Mr. Myers.

          MR. MYERS:  Okay.

          THE COURT:  I assume you'll get the same --

          MR. MYERS:  I think that point has been made.  Thank

*KRAFT, Ph.D. - DIRECT*

you, Your Honor.

**BY MR. MYERS:**

**Q.** Now, you mentioned that Mr. Steinhaus, by your reporting or his reporting to you, was looking for teen pornography of girls over 18 made to look 16 to 18 --

**A.** Uh-huh.

**Q.** -- and that a few people sent him prepubescent pornography, but he was not turned on by it.

**A.** That's correct.

**Q.** And you also stated that you never reviewed the pornography recovered from his devices.

**A.** I did not see the visual imagery, no.

**Q.** But you -- did you get a report as to how much pornography was found on his devices in terms of illicit images of children engaged in sexually explicit activity?

**A.** Well, I don't remember the exact numbers.  But the thing I wish I would have gotten was what was the volume of something prepubescent and how much of it was actually efebofilic, which would be adolescent-aged and/or adult-aged.  I would have liked to have seen that broken down.

**Q.** And there's not much point in me proffering that information because what matters here is what's in your report.

**THE COURT:** Is that information in any of the materials that you have?

**MR. MYERS:** It was provided much later in the process

to defense counsel.  And it's not in the binder here, so I didn't want to just proffer it.

MR. CITARAMANIS:  Your Honor, we don't have a forensic report that breaks down or describes each of the -- each image that was recovered.  We were given a figure in terms of the number of child pornography images and how many related to his daughter.

And we were certainly informed that there was also adult porn, but we don't have a breakdown in terms of specific numbers along those lines.

THE COURT:  Okay.

BY MR. MYERS:

Q.   Now, are you aware in the chats -- and we don't have to read them all -- of the defendant making numerous references to several of these individuals, including the two other non-undercovers here, one of whom has been arrested and charged with crimes -- I know you wouldn't know that.

But through those other chats, have you seen the discussions that Mr. Steinhaus had where he told his chat partners that he was showing adult and child pornography to his daughter?

A.   Yes.  Again, that would be part of the fantasy role-play that goes on to get attention.

Q.   And did you see -- and I know you wouldn't have seen the actual image -- but did you see the comment where he told an

offender that, you know, yes, I'm showing it to her now, and then sent a picture, which I'll proffer to you is a picture of his daughter in front of an iPad displaying child pornography? Do you remember that, personal chats?  I know it's hard to understand when you don't see the picture what's going on there.

A.   But, again, I'm not sure if the picture shows the actual imagery and the daughter looking at it or not or if that was just described as part of the fantasy.

Q.   In your experience, do individuals who have a sexual interest in minors engage in behavior in order to lower those minors' inhibitions about engaging in sexual conduct?

A.   Sometimes some do.

Q.   And I know common pop psychology will sometimes refer to that as grooming behavior?

A.   That can happen.

Q.   In many of his chats, Mr. Steinhaus discusses masturbating in front of his 2-year-old daughter or leaving his penis out in front of her.

Are those the types of behavior that individuals who have a sexual interest in children would engage in in order to normalize sexual conduct that is actually criminal?

A.   It could be, but there's no proof that he did that.

Q.   I was asking if that's the type of conduct.  Thank you, Doctor.

Is showing a child pornography in order to normalize sexual contact between children and adults the kind of behavior that an individual sexually interested in children would --

THE COURT REPORTER:  I'm sorry.  You were talking over each other.  I have "That an individual sexually interested in children would," and that's the last thing.  Could you repeat your question.

THE COURT:  Mr. Myers, back to you.

BY MR. MYERS:

Q.   -- would engage in in order to normalize that conduct?

A.   Yes, they could.

Q.   Did you see the discussion in -- did you see the multiple discussions he was having -- because these are all sort of happening in overlapping time -- about on the evening of December 9th, about the fact that his wife would be leaving soon and he would be alone with the child?

A.   Yes.

Q.   Did you see that he made comments to multiple other users, sending them pictures of the couch that he was going to put his daughter on, saying that that is where the assault is going to happen?

A.   Yes.

Q.   And did you see that later he, in fact, sent images of him sexually abusing his daughter laying on that couch to those same individuals?

**A.**    Yes.

**Q.**    Would you say that that's him engaging in online fantasy?

**A.**    Well, that's where he crossed the line.  He was engaging in behaviors at that time, obviously.

**Q.**    So Mr. Steinhaus is not an online fantasy offender, is he?

**A.**    He's both.

**Q.**    You've seen his multiple conversations about -- musing about whether or not his daughter likes what he's doing to her?

**A.**    Yes.

**Q.**    And in your experience or -- never mind.  I'll withdraw that.

Now, did you see the references in the chats that the defendant made to sexually abusing his sons?

**A.**    Yes.

**Q.**    And if you turn to Page 42 of the chats -- well, actually, sorry.  Before 42, I'd like to take you backwards a little with his chat with this offender, who is not the undercover officer, to Page 33.

So if you can read from the middle of that page -- really, from the middle of that page when Mr. Steinhaus says [reading]: I have two boys also.

**A.**    Yes.

**Q.**    And then he indicates that he has boys that are 7 and 5 years old, as well as a 2-year-old girl.

**A.**    Yes.

Q.   And when the other offender asks him or, you know, tells him, in response to Steinhaus saying that he's only playing with the girl, when he says, Okay -- when the other offender says, "Okay.  Well, your boys aren't too old," how does Mr. Steinhaus respond at the top of the next page?

A.   "Old enough to talk."

Q.   "Old enough to talk.  LOL"; is that correct?

A.   "LOL," yes.

Q.   Further on in his chat with that individual, to Page 42, is it your understanding of that conversation that he's now again returning to the theme of his -- involving his sons in his sexual offenses, saying, "Maybe my boys will tag-team her," referring to his daughter, "and let me in"?

A.   Yes, I see that.

Q.   And did you notice with each offender who claimed themselves to be abusing children, that Mr. Steinhaus had a conversation with them about how they ended up doing that and how they avoided getting caught?

A.   Yes, I saw that.

Q.   So not engaging in, you know, "Oh, that's so hot what you're doing and tell me more about what you're actually doing," but the mechanics of "How did you get the child to do it?  And how did you avoid getting caught?" -- do you understand the decision between those two types of conversations?

**A.**    Yeah.   I think to me that says how he's building up the excitement and the energy around the tabooness, focusing on the -- you know, the anxiety, almost, and the wrongness of the activity.   It's part of the -- sort of this interpsychic conflict that I see a lot of these guys create in their fantasy role-plays that adds to the excitement.

**Q.**    And what is that conclusion based on?

**A.**    My experience working with hundreds of men who engage in online activities, legal and illegally.

**Q.**    What about men who engage in activities that are not online; do you have substantial experience with men who engage in these activities in the physical world, like Mr. Steinhaus did?

**A.**    What activities are you referring to?

**Q.**    Putting your penis on your daughter, having her touch your penis, taking pictures of her genitalia up close, spreading her genitalia with your fingers, licking her genitalia sexual abuse of a toddler.

   Do you have experience dealing with individuals engaging in that conduct?

**A.**    I have interviewed and heard people share that in their history, yes.

**Q.**    And are they different to you than the individuals you keep referring to as online offenders?

**A.**    They can be.   They're not always different, but they can

be.   I mean, they're not always the same, but they can be different.

**Q.**   Did you see Mr. Steinhaus's discussion about when he wanted to start engaging in penetrative sex with his daughter?

**A.**   Yes.

**Q.**   And did that raise any concern in you that maybe that was something he actually planned to do?

**A.**   It's impossible to do that.   It's very rare for there to be penetrative activities with minors to begin with, especially in that age.   It would all be fantasy role-play to entice the other person he's interacting with.

**Q.**   But he said [reading]:   No, I'm not penetrating her that young.   I will lick her.

      And when asked, "When you're thinking of penetrating?" on Page 64 of the chats, he says, "When she is older, I'd love to take her out on a daddy-daughter date and do something."

      Do you recall that conversation?

**A.**   Yeah.

**Q.**   And that's in line with what you were just saying, isn't it, that it's in line with his other chats, that he wasn't ready to do more than he was doing until she was older; that he wanted to make sure that she wouldn't talk, but he wanted to make sure he [sic] was older before engaging in anything penetrative with the child?

**A.**   That's assuming that he was really going to do those

behaviors.  Again, it's fantasy role-play.  It's all enticement of the other person to respond.

Q.   Were you aware that he sent images of his daughter engaging in sexually explicit activity to 25 other individuals over a two-day span?

A.   I didn't know the exact numbers, but I was aware that he sent images out, yes.

Q.   And were you aware that he had a substantial collection just from those two days of child pornography?

A.   What -- what would be "substantial"?

Q.   Child pornography that he didn't -- 572 images, 39 videos of identified child pornography from 51 different series.

Now, 235 of those images were images that he took of his own daughter, but there are duplicates in there and only 79 unique images of child pornography of his daughter.

But would you say that the -- that those sorts of numbers are trivial amounts of child pornography, or is that a substantial collection?

A.   No.  What I say about those numbers is we don't know the details of the content of that information.  We said that earlier.  And I really wish I could have known that, how many of those images were of 14-, 15-, or 16-year-old girls.

Q.   Those are all prepubescent images that I'm referring to.

A.   Again, I -- I did not know that that was all definitely verified prepubescent images.  I --

Q.   Did you ask to look?

A.   I didn't need to look, but I assumed that there was also over 13 images that would be considered child pornography in that pile.  Wouldn't that be the case?

THE COURT:  And this is all over two days, what you're talking about?

MR. MYERS:  So many of the images were in unallocated space until the metadata is gone and the Government is unable to establish with any degree of certainty when they were created on the volumes on which they were found.

But in terms of metadata with allocated images, there wasn't anything in the allocated space prior to December 7th.

THE COURT:  Okay.

BY MR. MYERS:

Q.   Now, Dr. Kraft, you're familiar with what's referred to as the DSM-5, aren't you?

A.   Yes.

Q.   And did you rely on that in arriving at your conclusion on Page 5 of the report that he would not qualify for a diagnosis of pedophilia?

A.   Yes.

Q.   Now, your qualifier there, you say that on Page 5 of your report [reading]:  He would not qualify for a diagnosis of pedophilia since he does not report a sexual attraction to prepubescent children.

Is self-report of attraction to prepubescent children a diagnostic criterion for pedophilic disorder?

**A.** It's part of it.

**Q.** I'd like to turn you to Exhibit 7. Do you recognize this?

**A.** Yes.

**Q.** And this is, in fact, a copy of the pedophilic disorder section of the DSM-5; is that correct?

**A.** Yes.

**Q.** And can you explain to the Court -- although I'm sure the Court's familiar with it, but just for the record, explain to the Court what the DSM-5 is.

**A.** DSM-5 is a psychiatric diagnostic manual of all psychiatric conditions given with descriptions and coding numbers.

**Q.** Can you please read the three diagnostic criteria for pedophilic disorder which are at the bottom of Page 1 of Exhibit 7, Page 697 of DSM-5.

**A.** [Reading]: Over a period of at least six months, recurrent, intense sexual arousing fantasy, sexual urges or behaviors involving sexual --

THE COURT: I'm sorry. If you could read a little bit slower for the court reporter.

THE WITNESS: I'm sorry.

[Reading]: Over a period of at least six months, reoccurrent, intense sexually arousing fantasies, sexual urges

or behaviors involving sexual activity with a prepubescent child or children generally age 13 years or younger.

B, The individual has acted on these sexual urges or the sexual urges or fantasies caused mark distress or interpersonal difficulty.

And, C, The individual is at least 16 years and at least five years older than the child or the children in Criterion A.

**BY MR. MYERS:**

**Q.**   So -- and there are also two types of -- identified at the bottom of the page, is that correct, the exclusive and nonexclusive disorder?

**A.**   Yeah.

**Q.**   So I'd like you to turn to the second page of the exhibit, the diagnostic features.

**A.**   Uh-huh.

**Q.**   Because in the diagnostic criteria you just read, there's no mention of whether the defendant admits to being a pedophile or not, is there?  That's not a criteria?

**A.**   I'm not understanding.

**Q.**   If you go back to Page 1 again, in your report, you say he doesn't qualify for the diagnosis, quote, since he does not report a sexual attraction to prepubescent children.

**A.**   I can elaborate on that.

**Q.**   Please do.

**A.**   And I should have put this in there, and I wish I would have now.  He also doesn't qualify for the diagnosis because under Criterion A, he doesn't meet it.

**Q.**   Well, we'll get to Criterion A in a moment, Dr. Kraft.

**A.**   Okay.

**Q.**   So can you turn to the diagnostic features on the second page.

What is -- can you please read the first sentence of the "Diagnostic Features" section of the DSM-5 for pedophilic disorder for the Court.

**A.**   [Reading]:  The diagnostic criteria for pedophilic disorder are intended to apply both to individuals who freely disclose the paraphilia and to individuals who deny any sexual attraction to prepubescent children, generally age 13 and younger, despite substantial objective evidence to the contrary.

**Q.**   Does the defendant deny sexual attraction to prepubescent -- to prepubertal children?

**A.**   He denied that to me.

**Q.**   Would you say there's substantial objective evidence to the contrary based on the information that you've reviewed in preparing this report?

**A.**   Well, I don't see any other material going back at least longer than six months in that --

Q.    Well, setting aside the duration criterion, looking at the other criterion, is there substantial objective evidence, objective evidence, what he did, what he had, what he said in prerecorded messages, is there substantial, objective evidence to the contrary of his claim that he is not sexually attracted to prepubescent children?

A.    Are you asking me if he said that?

Q.    I'm asking you if you believe, based on the evidence that you've reviewed, that there is substantial objective evidence to the contrary of his statement that he is not sexually attracted to children?

A.    I don't quite understand the question.

Q.    Let me -- and I apologize for the negatives.

        THE COURT:   I think we should go ahead and let you explain what you were trying to explain before about Criterion A.

        And then we can come back to your question, Mr. Myers.

        MR. MYERS:   Well, can --

BY MR. MYERS:

Q.    Well, Dr. Kraft, could you read for the Court the last paragraph of the diagnostic features which I think would help address the Court's question about Criterion A.

A.    [Reading]:  The Criterion A clause indicating that the signs or symptoms of pedophilia have persisted for six months or longer is intended to ensure that the individual -- that the

sexual attraction to children is not merely transient. However, the diagnosis may be made if there is a clinical evidence of sustained persistence of the sexual attraction to children, even if the six-month duration cannot be precisely determined.

THE COURT:  And now if you'd like to elaborate on your earlier answer.

THE WITNESS:  Well, I don't have any evidence that over a -- longer than a six-month period that he -- now, he might have looked at imagery, but I don't hear of any sexual arousal.  I don't hear of prior offenses that would have indicated similar activities that he had with his daughter, so I don't have anything in the history to give me more information that there is actual sexual arousal going on to prepubescent children.

I think in this case what happened was merely transient.

BY MR. MYERS:

Q.   And stepping away from the actual diagnostic criteria -- so I hear your explanation on that.  But you made another conclusion other than that he doesn't qualify as -- for a diagnosis of pedophilia.

I'd like to turn your attention to Page 6 of your report.

Can you please -- can you please read the first sentence of the first -- or of the second full paragraph on that page.

**A.**   [Reading]:  It is also clear that Mr. Steinhaus does not pose a risk to harming a child in person nor should he be placed on the sex offender registry.  He stated no sexual attraction to a minor child anywhere in his sexual history.  There is no adequate research establishing a causal relationship between seeking out child pornography online and having contact sexual offenses with a minor, particularly if the person is not diagnosed with pedophilia.  I direct you to the excellent and scholarly research of Michael Setl, who published a book in 2013 entitled Internet Sex Offenders.

        **THE COURT:**  Setl is S-E-T-L.

**BY MR. MYERS:**

**Q.**   And can you finally read that last sentence.

**A.**   Which last sentence?

        **THE COURT:**  "Therefore."

**BY MR. MYERS:**

**Q.**   Starting at "therefore."

**A.**   [Reading]:  Therefore, I would not [sic] recommend that rather than incarcerating and registering Mr. Steinhaus as a sex offender, he be given counseling --

        **THE COURT:**  I'm sorry.  You need to slow down and start over again.

        **THE WITNESS:**  [Reading]:  Therefore, I would recommend that rather than incarcerate and register Mr. Steinhaus as a

sexual offender, he be given counseling and help to help him understand his psychological vulnerabilities and help him develop better emotional coping strategies.

**BY MR. MYERS:**

**Q.**   So stepping back to unpack that a little bit, you say that there's no adequate research establishing a causal relationship between seeking out child pornography online and having contact sexual offenses with a minor, especially if that person isn't diagnosed with pedophilia.

And setting aside the Government's, you know -- and I'm sure experts the Government could call -- contrary view of that issue, that's not the issue here, is it, Dr. Kraft?

The defendant engaged in, has admitted to, pled guilty to engaging in sexual contact with a child for the purpose of producing pictures of it, but he's admitted to real-life abuse of a child.

Why is your conclusion based on Internet sex offenders?

**MR. CITARAMANIS:**   Your Honor, I would object.  I think we're -- there's a difference between sexual contact maybe for guideline purposes versus sexual contact for purposes of psychological diagnoses, and I think that Mr. Myers is using the two interchangeably.

**THE COURT:**   Let me see if Dr. Kraft understood the question.  It's -- I did not understand it as having anything to do with the guidelines; just having to do with --

MR. CITARAMANIS:  Well, because there was an admission for purposes of the guidelines in the plea agreement that there was sexual contact within the purposes of -- within the meaning of the guidelines.

MR. MYERS:  There is admission to the fact of what he did.  I'm not talking about the guidelines.  And I hope the doctor doesn't understand he's talking about the guidelines.

BY MR. MYERS:

Q.   What I'm asking is if an individual has admitted to placing his erect penis to the vagina of a 2-year-old, to putting her hand on his erect penis, to putting his finger on her vagina, to licking her vagina, to taking pictures of all of these and sending them to other individuals who he is having conversations with about their shared sexual interest in children, is an individual who does all of those things in the real world still an Internet offender, in your opinion?

A.   Some of those things you listed we don't know if he really did.

Q.   He admitted to them, Dr. Kraft.  They're in the stipulated facts that he signed.

A.   He admitted to licking her?

Q.   He admitted to saying he licked her on multiple occasions to multiple other offenders.

A.   Okay.  That's a difference.

Q.   It is?  Do you think that it's likely that all of the

other things that he did and said that he did and admitted to -- that he did in the chats, that maybe he was telling the truth?

THE COURT: I don't think that's --

MR. MYERS: I understand, Your Honor.

THE COURT: -- that's a helpful question.

MR. MYERS: I'll withdraw that question.

BY MR. MYERS:

Q. But you say that he doesn't pose a risk to harming a child in person. Do you stand by that conclusion?

A. It's based on the fact that he's not sexually aroused to prepubescent children.

Q. You stand by the conclusion that he does not pose a risk to harming a child in person?

A. From the information that I was given and could ascertain, that is my opinion.

Q. In your opinion, has he ever harmed a child in person?

MR. CITARAMANIS: Objection.

THE COURT: That's sustained.

BY MR. MYERS:

Q. And is it still your opinion that he should not be incarcerated or placed on the sex offender registry?

A. I wish he could get adequate treatment. He's certainly not going to get that in the incarceration community.

Q. Well, I guess the question was: Is it still your opinion?

And it's your opinions that we're basing this report on --

THE COURT:  Well, that opinion, as you well know, not --

MR. MYERS:  I understand, Your Honor.

THE COURT:  -- is not really an issue about whether he's going to be incarcerated.

MR. MYERS:  I understand, Your Honor.  No further questions.

THE COURT:  Okay.  Thank you.

Mr. Citaramanis, do you want to ask any questions?

MR. CITARAMANIS:  Your Honor, I have a few questions if I could just ask Dr. Kraft.

CROSS-EXAMINATION

BY MR. CITARAMANIS:

Q.   Dr. Kraft, in terms of Mr. Steinhaus's chats and things he may have said during those chats, again, what is your general view of how that was factored into your conclusion?  Or how did those get factored into your findings and conclusion?

A.   I'm not sure what you mean by how -- be more specific.

Q.   Well, did -- I guess you've already testified to, you know, and given responses to questions about the chats as part of the Kik messages.

And, again, you indicated that a lot of the things that Mr. Steinhaus said in those, you don't know whether they ever happened; correct?

A.    That's correct.

Q.    And there's also no other evidence of any of those things having happened that were presented to you; correct?

A.    That's correct.

Q.    So, for instance, there was no photograph or video that Mr. Steinhaus took that was recovered and shared with you or a description shared with you indicating that he had masturbated and ejaculated on his daughter or in her presence; correct?

A.    Correct.

Q.    There was no other images or videos that were described in the materials given you that Mr. Steinhaus had engaged in any sort of licking of his daughter; correct?

A.    Correct.

Q.    And there is no video or pictures taken by Mr. Steinhaus to share with others committing any sexual act with his daughter; correct?

A.    Correct.

Q.    Okay.  Now, in terms of the DSM-5 and your diagnosis, would it be fair to say that in making that diagnosis, that Mr. Steinhaus's self-reported information to you was part of your diagnosis?

A.    That's correct.

Q.    And you relied on other sources of information too; correct?

A.    That's correct.

Q.   And that included, you know, the different items noted in your report; correct?

A.   Yes.

Q.   And is it accurate that included in those sources of information, such as the interview with his mother, you found out about Mr. Steinhaus and the different events and things that were going on in his life leading up to December 7th and December 8th of 2014; correct?

A.   That's correct.

Q.   And you considered those events and those circumstances in making your diagnosis; correct?

A.   That's correct.

Q.   And was there also included an FBI report of an interview with his wife or now ex-wife?

A.   Yes.

Q.   And was not there part of that report basically that she had not seen any sort of activity that had gone on or suspected any of the sort of activity that was admitted to as part of Mr. Steinhaus's guilty plea in this case?

A.   That's correct.  I didn't get any history.

Q.   So -- and you know that Mr. Steinhaus knows no convictions or other law enforcement contacts with reference to any similar behavior; correct?

A.   That's correct.

Q.   And so you took all of that into consideration:  His

report of what his sexual interests were; the fact that before December 7th, 2014, there don't appear to have been any other instances, whether reported by family members, suspected by family members, law enforcement, of any similar activity; correct?

A.   Correct.

Q.   And the fact that you don't have actual visual imagery in terms of pictures or videos taken by Mr. Steinhaus of any sexual act with his daughter; correct?

A.   Correct.

Q.   Now --

THE COURT:   Now, that may be -- I'm not sure how broadly you're defining "sexual act."

MR. CITARAMANIS:   Well, "sexual act," I guess I would -- I would --

BY MR. CITARAMANIS:

Q.   Can you perhaps tell the Court, what's your understanding of that term?

A.   Well, a sexual act would need to be, you know, sexual activity with -- with a person, with physical behaviors going on.  Having an image of an erect penis next to a child doesn't qualify as a sexual activity to me.

Now, he described other things that were in fantasy that makes it look/sound like it's beyond that.  But from what the images that were described to me, I wouldn't call that

sexual activity.

Q.   And maybe I should -- should characterize it as any --

THE COURT:  Okay.  I mean, what he's admitted to and what's in the chats is --

MR. CITARAMANIS:  It is what's there.

THE COURT:  It is what's there; correct.

BY MR. CITARAMANIS:

Q.   Now, Dr. Kraft, just -- there was the one -- questions you were asked about the chat with the undercover and that there was a reference by Mr. Steinhaus on December 8th of having talked to the person who ended up being the undercover a few weeks before; correct?

A.   Uh-huh.

THE COURT REPORTER:  I'm sorry, Doctor.  Was that "yes"?

THE WITNESS:  Yes.

BY MR. CITARAMANIS:

Q.   And you don't know, though, whether they had, in fact, spoken a few weeks before; correct?  That's just what Mr. Steinhaus had mentioned; correct?

A.   Correct.

Q.   And in terms of the postings, again, you said you're unfamiliar with how craigslist works in terms of whether the most recent is up top of the page or -- you know, however the postings are displayed, you're not familiar with; correct?

**A.**   I've got some idea of how they're displayed.  I don't know how long they stay up.  I think the question was that the previous posts would have disappeared, and I don't know how that works.

**Q.**   And -- and -- I mean, are you aware that craigslist also contains a search function which you can search for certain messages or certain postings?

**A.**   That would make sense.

**Q.**   Okay.  And the fact is when he had mentioned that he had, you know, contacted the undercover a few weeks before, you are not even sure exactly what the nature of the -- he doesn't say in there what the nature of that specific contact is, does he?

**A.**   I don't know what the nature of that contact was, no.

**Q.**   And there's no reference to any other contacts with the undercover or anybody else online of a similar nature from even a few weeks ago up till December 8th of 2014; correct?

**A.**   Correct.

**Q.**   And if you could just -- finally, Dr. Kraft, with respect to, again, why or the process of how Mr. Steinhaus came to engage in this behavior, do you have any insight from a psychological perspective as a psychologist as to how that came about, how he got to that point where he crossed the line?

**A.**   Well, there are some significant historical events.  One, and it was substantiated by his mother, is that he's had depression since a very early age in his life.  It sounded to

me as he aged and up to the point before this incident happened, probably within the previous couple years, he was suffering from what sounded like a major depressive disorder.

I also know that closer to the event, he lost a stepsister.  And he was about four weeks out from that when this event happened, so he was probably in an acute state of grief.

I know that he went and saw a psychiatrist to get -- or his doctor -- I'm not sure who prescribed it -- to get medications to help with the depression.

Unfortunately, I don't think he was referred for any other support like talk therapy or group therapy, which would have been much more preferred if I was consulting on the case.

And then he -- there was this period of time about two weeks before the incident that both his mother and he reported where he was behaving and acting in very unusual ways, quite agitated, quite anxious, quite elevated.

And I was concerned that not only was he in an acute depressive disorder condition, but there was something going on with the medications, that he might be having a reaction.  And, in fact, he said a few days before the incident happened, he had called his doctor to say he was concerned about the medication, the side effects he was feeling, and wanted to be seen.

So that whole buildup really concerned me and made me feel

that that was a big condition to create this -- this state during these three days where he lost judgment and went to these extreme places.

And I've seen this happen with other people who are in acute distress. They don't all end up doing exactly what he did, but people will rely and turn to a variety of coping strategies. Many times it's drugs or alcohol. And some people will turn to Internet sexual activities, and that was how I conceptualized part of what happened here.

He was, you know, self-medicating in a lot of ways by trying to escape through the fantasy role-plays and enticement with his daughter to get more imagery. It's all kind of part of the buildup.

But those are the factors that I thought were pretty significant and unique. I haven't seen that kind of manifestation so acutely in anyone before.

And so that's why I think the criterion of six months is really important here diagnostically because this happened in a very short, acute period of time with these other factors going on in his life.

I should also mention that he was working 70 and 80 hours a week, so he was probably significantly sleep-deprived. So mentally, he was in no sound state whatsoever when this condition -- when this situation occurred.

MR. CITARAMANIS: I have no further questions,

Your Honor.

MR. MYERS:  Just very brief redirect, Your Honor.

THE COURT:  All right.

REDIRECT EXAMINATION

BY MR. MYERS:

Q.   Dr. Kraft, in your knowledge and experience, depression, loss of a family member, sleep deprivation, overwork, taking of medications -- those are all common things that happen to people; correct?

A.   I wouldn't say they're common, but they can happen to people, yes.

Q.   Is a common reaction to those stimuli for someone to engage in sexual abuse of a 2-year-old?

A.   I wouldn't say that's common, no.

Q.   Now, you mentioned that one of the things you relied on was that there had been no prior reports of abuse by Mr. Steinhaus; is that correct?

A.   That's correct.

Q.   And we also discussed in your direct testimony the preoccupation in the chats with avoiding getting caught and being worried about the age of victims in terms of them telling someone; is that correct?

A.   Yes.

Q.   And a 2-year-old isn't in a position to report sexual abuse if no one else is around, are they?

**A.** Not usually.

**Q.** Now, you said in discussing the chats with defense counsel that you don't know if what was said on the Kik chats is true, so you didn't rely on it; is that correct?

**A.** I assumed it was fantasy role-play.

**Q.** So you assumed it wasn't true when you evaluated it?

**A.** If I don't have anything else to give me information otherwise, I -- I have to go with that. A lot of fantasy role-play is very extreme.

**Q.** Do you make -- so that's how you treat that evidence because it's not corroborated; is that what your testimony is?

**THE COURT:** He's explained.

**BY MR. MYERS:**

**Q.** Do you take the same approach with the testimony of a defendant who's facing criminal prosecution that that information shouldn't be relied upon? Or do you think that that information is reliable and you use it to form your opinions?

**A.** It's part of what I form my opinion on. It's not all, and that's the best information I can get.

**Q.** Do individuals in the position of Mr. Steinhaus have a motivation or reason to lie to you such as to reduce criminal punishment?

**A.** I think anyone's position could certainly be motivated to under-report information, yes.

Q.   Or to misreport information?

A.   Both.

Q.   And based on that, do you take the same skeptical view of statements by the --

A.   It's part of the over -- it's part of the overall assessment that I do.  It's the only -- it's the best information I can get in these circumstances.

        MR. MYERS:  Nothing further, Your Honor.

        THE COURT:  Okay.  Anything else --

        MR. CITARAMANIS:  Nothing else, Your Honor.

        THE COURT:  -- Mr. Citaramanis?

        Thank you very much, Dr. Kraft.

        THE WITNESS:  Thank you.

        THE COURT:  Appreciate your time.

        THE WITNESS:  Do you want this back?  Do you want this back book?

        THE COURT:  Step down.  Give the book back.

     (Witness excused.)

        THE COURT:  It's actually Mr. Myers' book.  All right.  Thank you.  Anything else that you want --

        MR. MYERS:  Nothing else from the Government.

        MR. CITARAMANIS:  I guess we're back here tomorrow at 11:30; correct, Your Honor?

        THE COURT:  I don't have my calendar open, but whatever --

**MR. MYERS:**  I have 11:30 as well, Your Honor.

**THE CLERK:**  Yes.

**THE COURT:**  -- time you've got.  If 11:30 --

**THE CLERK:**  11:30.

**THE COURT:**  If 11:30 is correct.

I will see you then.

And, again, we've anticipated, I guess, some of the questions that I had as well.  The statement of facts indicates that the Kik user account was created on December 7th of 2014.  And it certainly had been my assumption from the stipulated facts, which I would rely on, is that we were talking about a fairly short period of time.

If there's evidence to the contrary . . .

**MR. MYERS:**  It is correct, Your Honor, that the accounts that the Government became aware of, and are the basis of the counts of conviction, are all created, both the e-mail account and Kik account, are created almost at the same time, December 7th.

Of course, that's not to say that he never had any other account; just that the Government -- that is all that the Government has been able to obtain in the investigation.

**THE COURT:**  Okay.  So both the e-mail and the Kik account are at the same time?

**MR. MYERS:**  Yes; the Yahoo and the Kik account.

(Counsel conferred.)

**MR. CITARAMANIS:**  Just to clarify, the accounts were set up on the 7th, but there's no --

**MR. MYERS:**  There may be some on the 7th because of the UTC time conversion.  Some of it might be late the night of the 7th, but all on or about the 7th, 8th, and 9th in terms of what we were covering.

**THE COURT:**  You were asking questions suggesting that he might have been in contact with the undercover agent in November.

**MR. MYERS:**  Yes, Your Honor.

**THE COURT:**  Is there any evidence of that?

**MR. MYERS:**  Yes, Your Honor.  In the search warrant for the Yahoo e-mail account, as the affiant makes clear -- and this is in the e-mails, not the Kik with the undercover, but the e-mails with the undercover, the defendant e-mails the undercover saying that he had a problem with his account, but they had e-mailed a few weeks before.

**THE COURT:**  I saw that entry, but you just told me that that e-mail account was created December 7th, unless I misunderstood you.

**MR. MYERS:**  So -- so the way the Government takes that e-mail is that Mr. Steinhaus had used a different e-mail account that the Government doesn't have to send the prior e-mail, but we don't know for sure.

**THE COURT:**  You don't know that.  I mean, the

undercover is not in a position to testify that there was some contact between Mr. Steinhaus and --

**MR. MYERS:**  No.

**THE COURT:**  Okay.

**MR. MYERS:**  That's not what we're saying, Your Honor.

**THE COURT:**  Okay.  I'll see you tomorrow at 11:30.

**MR. MYERS:**  Thank you, Your Honor.

     (Court adjourned at 3:57 p.m.)

                           INDEX

                   GOVERNMENT'S EVIDENCE

| WITNESS | DR | CR | RDR | RCR |
|---|---|---|---|---|
| CHRIS KRAFT, Ph.D. | 7 | 48 | 56 | -- |


     I, Douglas J. Zweizig, RDR, CRR, do hereby certify that the foregoing is a correct transcript from the stenographic record of proceedings in the above-entitled matter.


                    _____/s/_____

                    Douglas J. Zweizig, RDR, CRR
                    Registered Diplomate Reporter
                    Certified Realtime Reporter
                    Federal Official Court Reporter

                    DATE:  April 28, 2017

**'**

'cause [1]  10/24

**/**

/s [1]  61/17

**0**

003 [1]  24/7

**1**

10 [4]  20/10 20/11 20/12 20/25
101 [1]  1/24
11 [1]  21/11
11:30 [6]  58/23 59/1 59/3 59/4
 59/5 61/6
13 [4]  20/11 22/13 40/2 41/16
13 images [1]  38/3
14 [2]  20/12 37/22
15 [2]  1/8 37/22
16 [2]  29/5 40/7
16-year-old [1]  37/22
17 [2]  27/18 27/24
18 [2]  29/5 29/5

**2**

2-year-old [6]  23/14 31/18
 33/24 46/10 56/13 56/24
2002 [1]  14/25
2013 [1]  44/10
2014 [7]  8/24 19/19 21/9 50/8
 51/2 53/16 59/9
2015 [1]  8/24
2016 [3]  18/13 18/14 18/19
2017 [2]  1/8 61/21
21201 [1]  1/25
235 [1]  37/13
25 [1]  37/4
28 [1]  61/21
2:38 p.m [1]  2/2

**3**

30th [1]  18/19
32 [1]  21/15
33 [1]  33/18
3553 [1]  5/23
39 videos [1]  37/11
3:57 [1]  61/8

**4**

42 [3]  33/15 33/16 34/9
48 [1]  61/12
4th [1]  1/24

**5**

51 [1]  37/12
544 [2]  1/4 2/9
56 [1]  61/12
572 images [1]  37/11

**6**

611 [1]  4/21
64 [1]  36/15
697 [1]  39/17

**7**

70 [1]  55/21
79 unique images [1]  37/15
7D [1]  1/9
7th [11]  22/10 38/12 50/7 51/2
 59/9 59/18 60/2 60/3 60/5 60/5
 60/19

**8**

8-year-old [1]  25/3
80 [1]  55/21
8th [5]  21/7 50/8 52/10 53/16
 60/5

**9**

99 [1]  14/25
9th [3]  22/10 32/15 60/5

**A**

able [2]  10/10 59/21
about [38]  9/21 12/13 14/6
 16/14 16/22 17/10 20/23 23/21
 24/18 25/14 27/1 31/12 32/14
 32/15 33/7 33/8 34/17 34/21
 35/10 36/3 37/19 38/6 42/15
 42/22 46/6 46/7 46/14 48/5
 48/21 50/6 52/9 53/22 54/5
 54/14 54/22 56/21 59/11 60/5
above [1]  61/16
above-entitled [1]  61/16
abuse [5]  35/17 45/15 56/13
 56/16 56/25
abusing [3]  32/24 33/13 34/16
access [1]  16/14
according [2]  8/20 21/9
account [11]  21/15 59/9 59/17
 59/17 59/20 59/23 59/24 60/13
 60/16 60/19 60/23
accounts [2]  59/15 60/1
accurate [1]  50/4
accused [1]  17/6
across [1]  6/3
act [5]  49/15 51/9 51/13 51/14
 51/19
acted [1]  40/4
acting [1]  54/16
activities [7]  35/9 35/10 35/12
 35/14 36/9 43/12 55/8
activity [11]  22/21 29/15 35/4
 37/4 40/1 50/17 50/18 51/4
 51/20 51/22 52/1
actual [7]  6/25 24/19 30/25
 31/7 43/14 43/19 51/7
actually [7]  10/8 29/18 31/22
 33/15 34/21 36/7 58/19
actuarial [1]  11/20
acute [4]  54/6 54/18 55/5 55/19
acutely [1]  55/16
ad [7]  21/3 21/14 21/20 21/20
 21/24 22/5 22/7
additional [5]  9/17 10/21 10/22
 18/17 18/19
address [1]  42/22
adds [1]  35/6
adequate [4]  15/9 44/5 45/6
 47/23
adjourned [1]  61/8
adjunct [1]  8/4
admissible [2]  3/7 5/19
admission [2]  46/1 46/5
admits [1]  40/19
admitted [11]  18/8 21/12 45/13
 45/15 46/9 46/19 46/21 46/22
 47/1 50/18 52/3
adolescent [1]  29/19
adolescent-aged [1]  29/19
adopting [1]  13/20
adult [4]  10/15 29/19 30/9
 30/20

adult-aged [1]  29/19
adults [2]  29/19 30/2
affiant [3]  20/12 21/9 60/13
affidavit [1]  23/9
afraid [1]  25/20
after [5]  3/16 13/8 18/18 23/7
 25/19
afternoon [6]  2/3 2/6 2/14 2/19
 7/6 7/7
afternoon's [1]  2/12
afterwards [1]  14/12
again [15]  4/9 14/20 23/24
 30/22 31/7 34/11 37/1 37/24
 40/22 44/23 48/16 48/23 52/22
 53/19 59/7
against [2]  6/9 16/5
age [7]  10/24 23/15 36/10 40/2
 41/15 53/25 56/21
aged [3]  29/19 29/19 54/1
agenda [2]  23/3 23/4
agent [3]  1/20 2/11 60/8
agitated [1]  54/17
ago [2]  21/15 53/16
agreed [1]  17/21
agreement [4]  17/20 18/9 18/11
 46/2
ahead [1]  42/14
alcohol [1]  55/7
all [45]  2/13 2/17 2/18 3/8 3/8
 5/8 5/22 7/3 9/8 9/19 10/11
 10/17 10/22 10/23 12/7 16/3
 16/11 16/24 17/3 19/2 23/9
 23/24 24/3 24/18 30/14 32/13
 36/10 37/1 37/23 37/24 38/5
 39/12 46/12 46/15 46/25 50/25
 55/5 55/12 56/3 56/8 57/19
 58/19 59/16 59/20 60/5
allocated [2]  38/11 38/12
allow [1]  5/2
almost [2]  35/3 59/17
alone [1]  32/16
along [3]  2/10 25/17 30/10
already [2]  9/21 48/20
also [18]  1/19 13/9 18/7 23/5
 23/12 29/10 30/8 33/21 38/2
 40/11 41/3 44/1 49/2 50/13 53/5
 54/4 55/21 56/19
although [4]  2/19 3/4 18/7 39/9
always [2]  35/25 36/1
am [6]  7/23 7/25 11/16 14/24
 19/25 26/18
AMERICA [2]  1/3 2/8
among [1]  16/6
amounts [1]  37/17
analysis [1]  12/2
and/or [1]  29/19
anonymity [1]  28/14
another [1]  43/20
answer [1]  43/7
anticipated [1]  59/7
anxiety [1]  35/3
anxious [1]  54/17
any [50]  4/13 4/15 4/16 5/22
 6/2 9/10 9/12 9/15 9/17 10/3
 10/3 11/9 11/19 12/3 12/23
 13/10 13/20 15/22 18/17 18/19
 20/17 21/24 21/24 22/19 23/20
 26/24 29/23 36/6 38/9 41/15
 41/24 43/8 43/10 48/10 49/2
 49/11 49/15 50/17 50/18 50/20
 50/22 51/2 51/4 51/8 52/2 53/14
 53/20 54/11 59/19 60/11

Case 1:15-cr-00544-CCB   Document 43   Filed 04/28/17   Page 63 of 74

**A**

anybody [3]   4/12 17/6 53/15
anyone [1]   55/16
anyone's [2]   28/12 57/24
anything [10]   9/20 10/22 28/11
 36/23 38/12 43/13 45/24 57/7
 58/9 58/20
anywhere [1]   44/4
apologize [1]   42/13
appealing [1]   16/18
appear [1]   51/2
appearing [1]   2/16
application [5]   19/20 19/24
 20/1 20/3 20/21
apply [2]   5/15 41/13
Appreciate [1]   58/14
approach [3]   4/7 7/17 57/14
appropriate [1]   6/14
April [1]   61/21
are [57]   2/23 2/24 3/1 3/8 3/9
 4/2 7/22 7/24 9/3 11/19 11/20
 13/3 14/20 16/3 16/3 16/4 16/6
 17/21 19/24 20/5 20/15 20/17
 24/18 25/23 26/16 26/19 27/2
 27/3 27/7 28/15 28/20 30/13
 31/20 32/13 33/23 35/10 35/14
 35/23 37/14 37/17 37/23 39/16
 40/11 41/13 42/7 52/25 53/5
 53/10 53/23 55/4 55/14 56/8
 56/25 59/15 59/16 59/17 59/23
area [4]   12/20 13/12 14/21 22/2
areas [1]   23/12
aren't [3]   21/18 34/4 38/16
arguing [1]   6/9
argument [2]   5/25 6/19
around [3]   16/15 35/2 56/25
arousal [6]   27/4 27/6 27/7
 27/15 43/11 43/14
aroused [3]   26/23 27/16 47/11
arousing [2]   39/19 39/25
arrested [1]   30/16
arrived [3]   6/12 18/12 26/22
arriving [4]   13/21 17/12 20/9
 38/18
as [56]   5/13 5/17 5/18 5/23 6/3
 6/3 6/9 6/10 6/19 6/21 8/9 8/17
 8/21 8/23 8/25 9/5 9/5 10/7
 15/3 16/13 16/17 16/17 17/11
 17/14 20/3 21/11 22/21 22/23
 22/25 23/9 24/9 27/11 29/13
 31/9 31/15 33/24 33/24 35/24
 38/15 43/21 44/20 44/25 45/24
 48/2 48/21 50/5 50/18 51/22
 52/2 53/21 53/21 54/1 57/22
 59/1 59/8 60/13
ascertain [1]   47/15
aside [3]   6/2 42/1 45/10
ask [7]   4/7 6/17 10/19 20/23
 38/1 48/10 48/12
asked [5]   10/21 28/21 28/21
 36/14 52/9
asking [11]   13/3 14/1 14/2
 22/19 25/17 26/11 31/24 42/7
 42/8 46/9 60/7
asks [2]   24/21 34/1
assault [1]   32/20
assess [1]   17/4
assessment [8]   8/15 12/2 12/12
 13/9 13/11 13/16 14/21 58/6
assessments [4]   8/12 8/13 11/16
 15/3

**B**

assignment [1]   8/1
Assistant [1]   1/13 2/9
assume [2]   9/4 28/24
assumed [3]   38/2 57/5 57/6
assuming [1]   36/25
assumption [1]   59/10
attempting [1]   19/4
attention [6]   5/12 23/4 26/2
 27/9 30/23 43/23
attorney [3]   1/16 2/9 11/7
attracted [2]   42/5 42/11
attraction [9]   27/4 38/24 39/1
 40/24 41/15 41/18 43/1 43/3
 44/4
August [2]   18/14 18/19
August 30th [1]   18/19
available [3]   9/19 18/15 20/6
avoid [2]   4/17 34/23
avoided [1]   34/18
avoiding [1]   56/20
aware [20]   5/13 11/19 14/20
 14/24 15/6 16/3 16/4 16/8 17/8
 24/9 26/12 26/16 26/18 26/19
 30/13 37/3 37/6 37/8 53/5 59/15
away [1]   43/19

**B**

back [9]   32/8 40/22 41/24 42/17
 45/5 58/15 58/16 58/17 58/22
backwards [1]   33/16
bad [1]   25/20
Baltimore [2]   1/9 1/25
based [10]   15/7 16/9 22/3 22/7
 35/7 41/22 42/8 45/17 47/11
 58/3
basically [2]   11/24 50/16
basing [1]   48/1
basis [3]   17/13 17/23 59/15
bat [1]   25/12
be [61]   2/3 3/23 3/23 3/25 4/9
 4/14 4/17 5/4 5/5 5/19 6/15
 7/10 10/7 10/16 12/3 12/15
 12/18 12/21 13/2 13/15 13/17
 13/19 14/3 17/17 19/5 19/23
 21/13 22/11 24/6 25/10 29/19
 30/22 31/23 32/15 32/16 34/16
 35/25 36/1 36/1 36/9 36/10
 37/10 38/3 38/4 43/2 43/4 44/2
 44/21 45/1 47/21 48/6 48/19
 49/19 51/12 51/19 54/20 54/23
 57/16 57/24 60/3 60/4
became [1]   59/15
because [13]   2/20 5/18 10/17
 13/3 28/18 29/22 32/13 40/18
 41/3 46/1 55/18 57/11 60/3
become [1]   7/1
been [15]   11/12 20/19 22/4 22/5
 22/8 22/9 27/12 28/25 30/16
 51/2 54/13 56/16 59/10 59/21
 60/8
before [16]   1/11 5/10 17/25
 28/22 33/16 36/23 42/15 51/1
 52/12 52/19 53/10 54/1 54/15
 54/21 55/16 60/17
began [2]   19/19 23/13
begin [2]   7/3 36/9
behalf [1]   2/10
behaving [1]   54/16
behavior [6]   31/11 31/15 31/20
 32/2 50/23 53/20
behaviors [6]   8/7 33/4 37/1
 39/20 40/1 51/20

**C**

being [6]   17/6 17/12 28/11
beings [1]   11/11
believe [4]   15/10 18/11 22/8
 42/8
bench [4]   4/7 12/24 13/1 14/18
bent [1]   13/8
best [5]   4/17 17/4 17/8 57/20
 58/6
better [1]   45/3
between [12]   8/24 19/9 20/13
 25/25 26/4 26/10 32/2 34/24
 44/6 45/7 45/19 61/2
beyond [4]   9/15 22/10 27/7
 51/24
big [2]   26/4 55/1
Bileck [2]   1/20 2/11
binder [4]   8/17 8/22 17/19 30/1
biological [1]   27/6
bit [3]   12/3 39/21 45/5
BLAKE [1]   1/11
board [1]   20/5
book [4]   44/10 58/16 58/17
 58/19
both [7]   12/25 33/6 41/13 54/15
 58/2 59/16 59/22
bottom [5]   24/20 25/5 27/18
 39/16 40/12
boys [4]   33/21 33/23 34/4 34/12
breakdown [1]   30/9
breaks [1]   30/4
brief [1]   56/2
bring [1]   5/11
bringing [1]   13/17
broadly [1]   51/13
broken [1]   29/20
brought [1]   6/15
building [1]   35/1
buildup [2]   54/25 55/13
bulletin [1]   20/5
burden [1]   3/6
buttocks [2]   22/15 22/17

**C**

C-H-R-I-S [1]   7/13
calendar [1]   58/24
calf [1]   22/17
call [5]   2/5 2/7 5/10 45/11
 51/25
called [4]   3/9 12/2 19/20 54/22
calling [1]   4/20
came [3]   3/19 53/19 53/21
can [30]   2/3 12/11 13/23 14/10
 17/3 17/4 17/8 26/3 26/25 27/18
 31/16 33/19 35/25 35/25 36/1
 39/9 39/15 40/25 41/7 41/9
 42/17 42/18 43/24 43/24 44/14
 51/17 53/6 56/10 57/20 58/7
cannot [2]   16/23 43/4
career [1]   8/13
careful [1]   13/15
case [13]   1/4 2/5 4/4 9/14 14/2
 17/15 17/20 18/12 20/20 38/4
 43/16 50/19 54/13
cases [1]   15/22
CATHERINE [1]   1/11
caught [4]   23/22 34/18 34/23
 56/20
causal [2]   44/6 45/6
caused [1]   40/5
CCB [2]   1/4 2/9
CCB-15-544 [1]   1/4

Case 1:15-cr-00544-CCB   Document 43   Filed 04/28/17   Page 64 of 74

**C**

Center [1]  9/1
certain [3]  13/11 53/6 53/7
certainly [9]  3/24 12/11 12/13
 12/16 14/10 30/8 47/23 57/24
 59/10
certainty [1]  38/9
Certified [1]  61/19
certify [1]  61/14
cetera [1]  21/5
chance [4]  6/11 17/16 18/24
 20/25
characterize [1]  52/2
characterized [1]  22/20
charged [2]  28/11 30/16
charges [2]  8/22 19/10
chat [8]  9/15 19/19 23/19 25/3
 30/19 33/17 34/9 52/9
chatroom [1]  20/5
chats [24]  19/6 20/18 23/20
 24/2 24/20 25/13 27/18 28/10
 30/13 30/18 31/4 31/17 33/12
 33/15 36/15 36/20 47/2 48/15
 48/16 48/21 52/4 56/20 57/2
 57/3
child [32]  8/12 10/7 11/16
 11/21 15/4 22/21 22/23 30/6
 30/20 31/3 32/1 32/16 34/22
 36/24 37/9 37/11 37/12 37/15
 37/17 38/3 40/2 40/8 44/2 44/4
 44/6 45/7 45/14 45/16 47/9
 47/14 47/17 51/21
child pornography [14]  10/7
 22/21 22/23 30/20 31/3 32/1
 37/9 37/11 37/12 37/15 37/17
 38/3 44/6 45/7
child pornography images [1]
 30/6
child sex offenders [4]  8/12
 11/16 11/21 15/4
children [23]  16/5 26/23 26/24
 29/14 31/21 32/2 32/3 32/6
 34/16 38/25 39/1 40/2 40/8
 40/24 41/15 41/19 42/6 42/11
 43/1 43/4 43/15 46/15 47/12
choice [1]  17/2
choose [1]  20/4
chooses [1]  4/6
chosen [2]  15/11 24/9
CHRIS [3]  7/9 7/13 61/12
CHRIS KRAFT [3]  7/9 7/13 61/12
circumstance [1]  4/19
circumstances [3]  17/5 50/10
 58/7
Citaramanis [5]  1/18 2/15 11/5
 48/10 58/11
cite [1]  17/11
claim [1]  42/5
claimed [2]  23/15 34/15
claiming [1]  25/2
clarified [1]  12/16
clarify [5]  12/11 14/8 14/11
 18/11 60/1
clause [1]  42/23
clear [3]  13/19 44/1 60/13
clinical [2]  8/6 43/2
close [1]  35/16
closer [1]  54/4
coding [1]  39/13
coincide [1]  22/25
collection [3]  10/6 37/8 37/18

combined [1]  17/2
come [3]  6/13 42/4 42/11
comes [1]  4/5
comment [3]  25/7 25/21 30/25
Comment's [1]  25/6
comments [4]  23/20 25/23 27/19
 32/18
committing [1]  49/15
common [6]  23/2 31/14 56/8
 56/10 56/12 56/14
communicate [1]  20/4
community [2]  19/22 47/24
completely [1]  6/7
comprehensive [1]  18/18
computer [1]  10/12
conceptualized [1]  55/9
concern [3]  10/14 25/12 36/6
concerned [3]  54/18 54/22 54/25
concerns [1]  23/21
concluded [1]  14/18
conclusion [10]  13/22 26/22
 35/7 38/18 43/21 45/17 47/10
 47/13 48/17 48/18
conclusions [5]  3/8 3/13 5/25
 6/8 6/12
condition [3]  54/19 55/1 55/24
conditions [1]  39/13
conduct [8]  8/14 17/14 22/10
 31/12 31/22 31/24 32/10 35/20
conducting [2]  8/12 15/3
conference [4]  3/17 5/17 13/1
 14/18
conferred [2]  7/16 59/25
conflict [1]  35/5
confused [1]  19/3
consider [4]  5/23 10/5 12/12
 14/6
consideration [1]  50/25
considered [3]  10/16 38/3 50/10
considering [2]  4/1 5/22
consultation [1]  8/7
consulting [1]  54/13
contact [16]  20/24 22/4 27/2
 27/5 27/14 32/2 44/7 45/7 45/14
 45/19 45/20 46/3 53/12 53/13
 60/8 61/2
contacted [1]  53/10
contacts [2]  50/22 53/14
contained [1]  4/3
contains [1]  53/6
content [2]  10/5 37/20
context [2]  6/9 24/5
continues [1]  25/17
contrary [6]  41/17 41/22 42/5
 42/10 45/11 59/13
conversation [3]  34/10 34/17
 36/17
conversations [5]  23/7 23/9
 33/7 34/25 46/14
conversion [1]  60/4
convicted [1]  16/6
conviction [2]  16/10 59/16
convictions [2]  16/20 50/21
convince [1]  13/24
copies [2]  4/6 9/3
coping [2]  45/3 55/6
copy [2]  17/19 39/6
core [1]  15/11
correct [50]  2/22 9/8 11/14
 11/18 29/9 34/7 39/7 40/12
 48/25 49/1 49/3 49/4 49/8 49/9
 49/12 49/13 49/16 49/17 49/22

 49/24 49/25 50/2 50/8 50/9
 50/11 50/12 50/20 50/23 50/24
 51/5 51/6 51/9 51/10 52/6 52/12
 52/19 52/20 52/21 52/25 53/16
 53/17 56/9 56/17 56/18 56/22
 57/4 58/23 59/5 59/14 61/15
correctly [1]  11/17
corroborated [1]  57/11
corroborating [2]  16/13 17/2
couch [3]  13/22 32/19 32/24
could [24]  4/17 7/5 10/22 16/24
 17/17 18/10 19/3 22/11 24/6
 25/6 25/10 27/12 31/23 32/6
 32/11 37/21 39/21 42/20 45/11
 47/15 47/23 48/12 53/18 57/24
counsel [11]  7/16 10/21 11/3
 11/12 12/8 12/18 18/20 27/23
 30/1 57/2 59/25
counseling [2]  44/21 45/1
counts [1]  59/16
County [1]  8/23
couple [4]  3/1 8/3 22/14 54/2
course [6]  18/8 22/5 22/9 22/12
 22/22 59/19
courses [1]  8/5
court [19]  1/1 1/24 3/10 3/22
 4/15 5/13 5/21 5/22 11/5 13/24
 18/12 39/9 39/11 39/22 41/11
 42/20 51/17 61/8 61/20
Court's [4]  5/2 5/11 39/10
 42/22
courtroom [3]  1/9 2/25 4/12
covering [1]  60/6
CR [1]  61/11
craigslist [6]  21/3 21/17 21/23
 22/2 52/23 53/5
create [4]  23/25 26/2 35/5 55/1
created [5]  38/10 59/9 59/16
 59/17 60/19
crimes [2]  16/6 30/17
criminal [7]  1/4 2/9 16/9 17/1
 31/22 57/15 57/22
Criminal No. CCB-15-544 [1]  2/9
criminally [1]  28/11
criteria [5]  39/15 40/18 40/20
 41/12 43/19
criterion [10]  39/2 40/9 41/4
 41/5 42/1 42/2 42/16 42/22
 42/23 55/17
Criterion A [6]  40/9 41/4 41/5
 42/16 42/22 42/23
CROSS [1]  48/13
CROSS-EXAMINATION [1]  48/13
crossed [3]  26/14 33/3 53/22
CRR [3]  1/23 61/14 61/18

**D**

daddy [3]  24/9 24/21 36/16
daddy-daughter [1]  36/16
dads [1]  21/4
danger [1]  13/25
date [3]  18/23 36/16 61/21
dated [3]  8/24 18/14 18/18
Daubert [3]  3/6 3/14 5/17
Daubert-like [1]  5/17
daughter [35]  22/15 22/24 23/14
 23/15 25/15 26/6 26/12 26/15
 26/17 26/24 27/11 27/14 27/17
 28/19 30/7 30/21 31/3 31/8
 31/18 32/20 32/24 33/8 34/13
 35/15 36/4 36/16 37/3 37/14
 37/15 43/12 49/8 49/12 49/16

Case 1:15-cr-00544-CCB Document 43 Filed 04/28/17 Page 65 of 74

**D**

daughter... [2]   51/9 55/12
daughter's [1]   26/20
day [1]   37/5
days [4]   37/9 38/5 54/21 55/2
dealing [1]   35/19
December [14]   8/24 18/12 19/19 22/10 32/15 38/12 50/7 50/8 51/2 52/10 53/16 59/9 59/18 60/19
December 2014 [1]   19/19
December 7th [7]   22/10 38/12 50/7 51/2 59/9 59/18 60/19
December 8th [3]   50/8 52/10 53/16
December 9th [1]   32/15
decision [1]   34/24
defendant [30]   1/6 1/17 4/25 9/6 9/23 11/13 13/25 15/12 16/25 17/14 17/23 18/8 18/20 20/14 21/13 22/9 22/14 23/13 23/20 24/10 26/23 27/20 28/10 30/14 33/13 40/19 41/18 45/13 57/15 60/15
defendant's [4]   9/6 11/13 15/12 22/3
Defender [1]   1/18
Defender's [1]   2/15
defense [15]   3/6 4/20 5/24 5/25 9/4 9/16 10/21 11/2 11/12 12/7 13/22 13/23 23/21 30/1 57/2
defining [1]   51/13
definitely [1]   37/24
degree [2]   21/17 38/9
denied [1]   41/20
deny [2]   41/14 41/18
department [1]   8/8
depicted [1]   4/2
depression [3]   53/25 54/10 56/6
depressive [2]   54/3 54/19
depressive disorder [2]   54/3 54/19
deprivation [1]   56/7
deprived [1]   55/22
described [5]   10/13 31/9 49/10 51/23 51/25
describes [2]   20/12 30/4
description [3]   10/9 10/23 49/7
descriptions [4]   3/20 4/2 10/15 39/13
despite [1]   41/16
details [2]   17/7 37/20
detective [1]   19/20
Detention [1]   9/1
determine [2]   12/23 16/10
determined [2]   15/8 43/5
develop [1]   45/3
devices [4]   10/1 10/4 29/11 29/14
diagnosed [2]   44/8 45/9
diagnoses [1]   45/21
diagnosis [12]   11/24 12/3 38/19 38/23 40/23 41/3 43/2 43/22 49/18 49/19 49/21 50/11
diagnostic [12]   11/19 14/20 39/2 39/12 39/15 40/16 40/18 41/7 41/10 41/12 42/21 43/19
diagnostically [1]   55/18
diaper [1]   22/17
did [45]   6/10 6/17 9/15 9/16 9/25 10/19 10/20 11/2 11/9

13/21 17/11 23/7 23/8 23/19 25/18 26/6 29/1 29/11 30/20 30/25 31/23 32/12 32/12 32/18 32/23 33/12 34/15 34/22 34/23 35/13 36/3 36/6 37/24 38/1 38/18 42/3 45/24 46/6 46/18 47/1 47/1 47/2 48/17 48/20 55/6
didn't [8]   11/10 18/14 30/2 37/6 37/11 38/2 50/20 57/4
difference [4]   26/4 26/10 45/19 46/24
different [13]   8/3 11/7 12/3 14/3 16/19 17/10 35/23 35/25 36/2 37/12 50/1 50/6 60/22
difficult [2]   13/10 13/12
difficulty [1]   40/6
Diplomate [1]   61/19
direct [4]   4/22 7/20 44/9 56/19
directly [1]   7/11
director [1]   8/6
disagreeing [1]   3/13
disappeared [1]   53/3
disclose [1]   41/14
discovery [3]   4/3 9/4 9/16
discussed [1]   56/19
discusses [2]   13/15 31/17
discussing [2]   3/15 57/2
discussion [2]   32/12 36/3
discussions [2]   30/19 32/13
disorder [10]   12/4 12/23 39/2 39/6 39/16 40/13 41/11 41/13 54/3 54/19
displayed [4]   4/14 9/3 52/25 53/1
displaying [1]   31/3
disprove [1]   17/4
distress [2]   40/5 55/5
DISTRICT [2]   1/1 1/1
DIVISION [1]   1/2
do [54]   2/5 3/9 5/14 8/15 11/3 12/2 12/22 14/7 14/7 14/13 15/10 16/1 16/9 16/25 17/8 18/24 20/1 20/3 22/12 24/3 24/20 26/5 26/5 26/8 31/4 31/10 31/13 34/22 34/23 35/11 35/19 36/7 36/8 36/16 36/17 36/21 36/25 39/4 41/1 45/25 45/25 46/25 47/10 48/10 53/20 57/10 57/14 57/16 57/21 58/3 58/6 58/15 58/15 61/14
doctor [8]   4/14 12/11 24/23 31/25 46/7 52/14 54/9 54/22
doctor's [2]   6/2 11/23
document [2]   17/25 18/23
documents [1]   21/13
does [15]   12/13 19/2 22/8 22/25 23/6 25/3 27/15 34/4 38/24 40/23 41/18 44/1 46/15 47/13 53/12
doesn't [12]   13/25 28/11 28/12 40/23 41/3 41/4 43/21 46/7 47/9 51/22 53/11 60/23
doing [7]   5/3 33/8 34/17 34/21 34/22 36/21 55/5
don't [44]   4/1 5/5 10/14 10/17 12/1 12/18 12/24 14/6 14/7 18/5 20/18 22/1 22/1 24/18 26/8 27/12 29/16 30/3 30/9 30/13 31/5 37/19 41/24 42/12 43/8 43/10 43/11 43/13 46/17 47/4 48/24 51/2 51/7 52/18 53/1 53/3 53/13 54/11 55/5 57/3 57/7

58/24 60/24 60/25
done [4]   26/16 50/14 54/18 55/1
doubt [1]   7/1
Douglas [3]   1/23 61/14 61/18
down [8]   3/19 4/5 22/16 22/17 29/20 30/4 44/22 58/17
DR [1]   61/11
Dr. [31]   2/21 2/25 3/7 3/16 3/21 3/22 4/11 5/4 6/18 6/23 7/4 7/22 12/1 14/15 14/20 17/16 18/13 18/17 19/24 38/15 41/5 42/20 45/12 45/23 46/19 48/12 48/15 52/8 53/18 56/6 58/12
Dr. Kraft [28]   2/21 2/25 3/16 3/21 3/22 4/11 5/4 6/23 7/4 7/22 12/1 14/15 14/20 17/16 18/17 19/24 38/15 41/5 42/20 45/12 45/23 46/19 48/12 48/15 52/8 53/18 56/6 58/12
Dr. Kraft's [3]   3/7 6/18 18/13
drama [1]   23/25
drugs [1]   55/7
DSM [7]   38/16 39/7 39/11 39/12 39/17 41/10 49/18
DSM-5 [7]   38/16 39/7 39/11 39/12 39/17 41/10 49/18
due [1]   12/7
duplicates [1]   37/14
duration [2]   42/1 43/4
during [2]   48/16 55/2

**E**

e-mail [10]   20/13 21/14 22/19 59/16 59/22 60/13 60/19 60/22 60/22 60/24
e-mailed [1]   60/17
e-mails [6]   22/13 22/14 22/22 60/14 60/15 60/15
each [4]   30/4 30/4 32/5 34/15
earlier [2]   37/21 43/7
early [1]   53/25
efebofilic [1]   29/18
effects [1]   54/23
ejaculated [1]   49/8
elaborate [2]   40/25 43/6
elevated [1]   54/17
else [9]   4/12 9/20 53/15 56/25 57/7 58/9 58/10 58/20 58/21
emotional [1]   45/3
employed [3]   7/22 7/24 7/25
encyclopedic [1]   20/18
end [1]   55/5
ended [2]   34/17 52/11
energy [1]   35/2
enforcement [2]   50/22 51/4
engage [8]   31/11 31/21 32/10 35/8 35/10 35/11 53/20 56/13
engaged [4]   22/9 29/15 45/13 49/11
engaging [9]   31/12 33/2 33/3 34/20 35/19 36/4 36/23 37/4 45/14
enough [2]   34/6 34/7
ensure [1]   42/25
enter [1]   17/23
entice [1]   36/10
enticement [2]   37/1 55/11
entitled [3]   14/8 44/10 61/16
entry [1]   60/18
erect [7]   26/17 26/20 27/11 27/12 46/10 46/11 51/21
erect penis [5]   26/17 26/20

Case 1:15-cr-00544-CCB   Document 143   Filed 04/28/17   Page 60 of 74

**E**

erect penis... [3]   46/10 46/11
 51/21
escape [1]   55/11
especially [3]   10/6 36/9 45/8
Esquire [2]   1/15 1/18
essentially [1]   15/11
establish [2]   3/6 38/9
establishing [2]   44/5 45/6
et [1]   21/5
et cetera [1]   21/5
EV [1]   24/7
EV Kik 003 [1]   24/7
evaluate [2]   11/21 14/22
evaluated [2]   25/23 57/6
evaluation [4]   10/7 12/23 18/13
 18/18
evaluations [2]   3/10 15/16
even [3]   43/4 53/11 53/15
evening [1]   32/14
event [2]   54/4 54/6
events [4]   28/20 50/6 50/10
 53/23
ever [5]   15/16 15/19 16/21
 47/17 48/24
everybody [1]   2/3
everything [2]   9/18 19/2
evidence [18]   4/21 5/14 9/17
 23/10 41/16 41/21 42/2 42/3
 42/4 42/8 42/9 43/3 43/8 49/2
 57/10 59/13 60/11 61/10
ex [1]   50/14
ex-wife [1]   50/14
exact [2]   29/16 37/6
exactly [2]   53/11 55/5
examination [7]   3/21 4/18 7/20
 12/19 14/14 48/13 56/4
examinations [1]   3/10
example [1]   14/25
excellent [1]   44/9
exceptions [1]   4/23
excitement [4]   23/25 26/2 35/2
 35/6
exclusive [1]   40/12
excused [1]   58/18
exhibit [9]   8/17 8/22 8/23 8/25
 9/2 20/8 39/4 39/17 40/15
Exhibit 2 [1]   8/22
Exhibit 3 [1]   8/23
Exhibit 4 [2]   8/25 20/8
Exhibit 5 [1]   9/2
Exhibit 7 [1]   39/17
expect [1]   20/18
experience [8]   9/11 15/7 31/10
 33/10 35/8 35/11 35/19 56/6
expert [3]   4/20 6/5 6/15
experts [1]   45/11
explain [5]   6/12 39/9 39/10
 42/15 42/15
explained [1]   57/12
explanation [1]   43/20
explicit [2]   29/15 37/4
explore [1]   13/21
extensively [1]   13/15
extraordinary [2]   6/6 6/7
extreme [2]   55/3 57/9
extremely [1]   6/22

**F**

f'ed [1]   28/15
face [2]   16/7 17/1

facilitate [1]   23/6
facing [1]   57/15
fact [16]   10/1 14/6 15/17 15/24
 22/7 27/4 32/15 32/23 39/6 46/5
 47/11 51/1 51/7 52/18 53/9
 54/21
factored [2]   48/17 48/18
factors [3]   5/22 55/14 55/19
facts [11]   9/12 17/21 17/22
 18/8 18/15 19/15 20/19 22/25
 46/20 59/8 59/11
factual [1]   17/13
faculty [1]   8/4
fair [2]   21/2 49/19
fairly [3]   6/6 19/5 59/12
fam [1]   21/4
familiar [7]   19/24 20/15 20/17
 21/17 38/15 39/10 52/25
family [5]   16/13 27/5 51/3 51/4
 56/7
fantasies [2]   39/25 40/5
fantasize [1]   26/4
fantasy [16]   25/25 26/2 28/18
 28/19 30/22 31/9 33/2 33/5 35/5
 36/10 37/1 39/19 51/23 55/11
 57/5 57/8
far [1]   16/17
fathers [1]   27/5
FBI [4]   1/20 2/11 8/23 50/13
features [4]   40/16 41/7 41/10
 42/21
February [1]   8/24
federal [9]   1/18 1/24 2/15 4/21
 5/14 8/25 11/2 20/8 61/20
feel [3]   3/5 23/4 54/25
feeling [1]   54/23
feelings [1]   26/24
felt [1]   26/23
few [11]   21/15 22/4 22/5 29/7
 48/11 52/11 52/19 53/10 53/16
 54/21 60/17
field [2]   11/20 16/24
figure [1]   30/5
filed [2]   17/20 18/12
final [1]   6/22
finally [3]   4/18 44/14 53/18
find [2]   6/23 19/21
findings [1]   48/18
finger [1]   46/11
fingers [1]   35/17
finished [1]   18/18
first [8]   2/11 3/4 4/7 5/13
 12/9 41/9 43/24 43/25
five [1]   40/8
Floor [1]   1/24
focus [4]   10/18 12/17 12/22
 14/11
focusing [1]   35/2
follow [1]   14/14
following [1]   18/22
foregoing [1]   61/15
forensic [2]   12/22 30/3
form [4]   6/3 15/14 57/17 57/19
formal [2]   12/12 13/7
found [8]   6/14 15/16 15/19
 19/15 22/25 29/14 38/10 50/5
four [2]   9/5 54/5
four-hour [1]   9/5
frame [1]   22/10
frankly [2]   4/1 6/6
Frederick [3]   8/23 9/1 21/16
Frederick County [1]   8/23

freely [1]   41/14
front [2]   31/18 31/19
full [7]   7/12 10/11 10/25 16/12
 17/7 17/22 43/25
function [1]   53/6
further [4]   34/9 48/7 55/25
 58/8

**G**

general [4]   8/10 8/11 16/4
 48/16
generalized [1]   25/12
generally [2]   40/2 41/15
genesis [1]   20/24
genitalia [3]   35/16 35/17 35/17
germane [1]   6/24
get [28]   6/13 6/25 10/10 10/14
 10/17 10/23 16/12 19/3 23/4
 23/22 25/18 26/1 27/9 27/10
 28/24 29/13 30/23 34/22 41/5
 47/23 47/24 48/18 50/20 54/8
 54/9 55/12 57/20 58/7
getting [6]   15/22 26/3 27/11
 34/18 34/23 56/20
girl [2]   33/24 34/3
girls [3]   28/16 29/5 37/22
give [10]   5/3 5/21 6/17 6/19
 6/20 22/8 27/1 43/13 57/7 58/17
given [8]   18/23 30/5 39/13
 44/21 45/1 47/15 48/21 49/11
giving [2]   6/11 17/7
GMT [1]   24/18
GMT/UTC [1]   24/18
go [6]   14/5 17/3 25/16 40/22
 42/14 57/8
goes [4]   6/18 12/19 25/25 30/23
going [21]   6/22 12/3 12/18 13/8
 13/17 14/5 17/7 24/3 27/9 31/5
 32/19 32/20 36/25 41/24 43/14
 47/24 48/6 50/7 51/21 54/19
 55/19
gone [2]   38/8 50/17
good [6]   2/3 2/6 2/14 7/6 7/7
 14/16
got [6]   13/15 21/15 27/12 53/1
 53/22 59/3
gotten [2]   9/18 29/17
Government [25]   2/10 3/5 3/17
 3/19 4/5 4/13 4/19 5/3 5/6 6/4
 6/9 6/10 6/14 11/25 12/18 13/17
 13/20 38/8 45/11 58/21 59/15
 59/20 59/21 60/21 60/23
Government's [6]   3/12 4/20 6/7
 8/17 45/10 61/10
Government's Exhibit [1]   8/17
graphic [1]   4/2
grief [1]   54/7
grooming [1]   31/15
ground [1]   4/10
group [1]   54/12
groups [1]   10/24
guess [7]   3/2 5/11 47/25 48/20
 51/14 58/22 59/7
guideline [1]   45/20
guidelines [5]   45/25 46/2 46/4
 46/6 46/7
guilty [3]   17/23 45/13 50/19
guy [1]   25/22
guys [3]   28/4 28/14 35/5

**H**

had [31]   3/17 9/18 17/16 18/23

Case 1:15-cr-00544-CCB   Document 43   Filed 04/28/17   Page 67 of 74

**H**

had... [27]  20/25 22/4 22/5
 22/7 22/9 30/19 34/16 37/8 42/3
 43/12 49/7 49/11 50/17 50/17
 52/18 52/20 53/9 53/9 53/24
 54/22 56/16 59/8 59/10 59/19
 60/16 60/17 60/22
hand [3]  7/8 26/20 46/11
Handing [1]  7/19
happen [6]  23/7 31/16 32/21
 55/4 56/8 56/10
happened [8]  43/16 48/25 49/3
 54/2 54/6 54/21 55/9 55/18
happening [1]  32/14
hard [3]  17/7 25/8 31/4
harmed [1]  47/17
harming [3]  44/2 47/9 47/14
has [16]  3/5 3/22 6/14 12/1
 16/21 26/8 26/23 28/13 28/25
 30/16 33/23 40/4 45/13 46/9
 47/17 59/21
have [76]
haven't [4]  9/20 10/3 18/23
 55/15
having [14]  27/5 27/6 27/13
 32/13 35/15 44/7 45/7 45/24
 45/25 46/13 49/3 51/21 52/10
 54/20
he [129]
he's [20]  22/22 22/24 22/24
 25/21 27/16 28/11 33/6 33/8
 34/2 34/10 35/1 36/11 45/15
 46/7 47/11 47/23 48/6 52/3
 53/24 57/12
hear [4]  6/5 43/10 43/11 43/20
heard [1]  35/21
hearing [1]  2/12
heighten [1]  23/24
help [5]  42/21 45/1 45/1 45/2
 54/10
helpful [1]  47/6
HENRY [2]  1/5 2/8
her [19]  22/15 22/16 31/1 31/19
 33/8 34/12 35/15 35/16 35/16
 35/17 36/12 36/13 36/16 46/11
 46/12 46/12 46/21 46/22 49/8
here [22]  2/7 2/10 2/19 3/12
 4/20 6/2 6/15 7/5 11/5 11/25
 13/2 13/8 13/17 14/2 24/4 29/22
 30/1 30/16 45/12 55/9 55/18
 58/22
hereby [1]  61/14
high [1]  21/25
highly [2]  3/23 7/1
him [14]  4/6 11/8 19/23 22/4
 26/16 26/19 28/17 29/7 32/23
 33/2 34/1 34/2 45/1 45/2
himself [4]  21/13 27/11 27/12
 28/10
his [88]
historical [1]  53/23
history [12]  15/25 16/1 16/10
 16/11 16/12 16/16 16/22 19/18
 35/22 43/13 44/5 50/20
honesty [1]  16/23
Honor [36]  2/6 2/14 2/22 2/24
 3/15 4/18 5/10 7/2 7/15 7/17
 11/22 12/5 12/16 13/6 13/19
 14/17 18/10 19/7 29/1 30/3
 45/18 47/5 48/4 48/7 48/11 56/1
 56/2 58/8 58/10 58/23 59/1

59/14 60/10 60/12 61/5 61/7
HONORABLE [1]  1/17
hope [3]  23/14 23/16 46/6
Hopkins [2]  7/25 8/2
hospital [1]  8/8
hostile [2]  4/24 5/4
hot [1]  34/20
hour [2]  9/5 9/6
hours [1]  55/21
how [36]  2/23 6/12 7/24 10/24
 12/19 13/15 19/3 22/1 24/21
 25/8 25/14 25/18 27/12 29/13
 29/18 30/6 34/4 34/17 34/18
 34/22 34/23 35/1 37/21 48/17
 48/17 48/19 51/12 52/23 53/1
 53/2 53/3 53/19 53/21 53/22
 55/8 57/10
however [3]  13/22 43/2 52/24
huge [1]  17/9
huh [12]  15/1 17/24 18/1 20/7
 21/10 22/6 24/8 24/11 24/22
 29/6 40/17 52/13
human [2]  8/5 11/11
hundreds [1]  35/8
hyphenating [1]  28/16

**I**

I'd [7]  20/8 24/2 33/16 36/15
 39/4 40/15 43/23
I'll [8]  12/19 14/13 14/14
 19/15 31/2 33/10 47/7 61/6
I'm [44]  2/7 2/9 5/1 5/16 6/22
 10/9 13/6 13/7 13/21 16/8 16/16
 17/5 17/7 17/17 18/2 18/4 20/20
 21/1 22/2 24/16 24/23 24/25
 26/11 27/22 27/25 28/15 31/1
 31/7 32/4 36/12 37/23 39/9
 39/21 39/23 40/21 42/8 44/22
 45/10 46/6 46/9 48/19 51/12
 52/14 54/9
I've [5]  9/2 25/23 28/5 53/1
 55/4
idea [1]  53/1
identified [3]  4/24 37/12 40/11
illegal [2]  10/14 10/16
illegally [1]  35/9
illicit [1]  29/14
illicit images [1]  29/14
image [4]  22/15 30/4 30/25
 51/21
imagery [11]  10/12 10/13 10/14
 10/23 10/23 27/15 29/12 31/8
 43/10 51/7 55/12
images [27]  9/3 9/22 9/25 10/3
 10/5 10/9 23/13 23/14 23/17
 25/22 29/14 30/6 32/23 37/3
 37/7 37/11 37/13 37/13 37/15
 37/22 37/23 37/25 38/3 38/7
 38/11 49/10 51/25
important [5]  6/1 6/4 20/23
 24/4 55/18
impossible [1]  36/8
inappropriate [1]  27/2
incarcerate [1]  44/25
incarcerated [2]  47/22 48/6
incarcerating [1]  44/20
incarceration [1]  47/24
incident [3]  54/1 54/15 54/21
inclined [1]  5/2
included [9]  8/21 8/23 8/25 9/2
 26/16 26/19 50/1 50/4 50/13
including [4]  4/23 22/17 27/11

30/15
INDEX [1]  61/9
indicate [1]  27/16
indicated [6]  3/17 3/19 3/23
 6/21 43/12 48/23
indicates [4]  25/12 25/21 33/23
 59/8
indicating [2]  42/23 49/7
indictment [3]  4/3 8/21 19/10
individual [12]  16/12 16/14
 16/21 21/12 32/3 32/5 34/9 40/4
 40/7 42/25 46/9 46/15
individual's [1]  10/6
individuals [11]  30/15 31/10
 31/20 32/25 35/19 35/23 37/4
 41/13 41/14 46/13 57/21
information [35]  6/11 8/15 8/20
 9/10 9/13 10/21 15/10 15/13
 15/23 16/13 17/3 17/11 17/11
 18/17 18/20 19/9 23/17 24/4
 27/1 29/22 29/23 37/20 41/22
 43/14 47/15 49/20 49/23 50/5
 57/7 57/16 57/17 57/20 57/25
 58/1 58/7
informed [1]  30/8
inhibitions [1]  31/12
insight [1]  53/20
instance [1]  49/5
instances [1]  51/3
intended [2]  41/13 42/25
intense [2]  39/19 39/25
intention [1]  4/12
interact [1]  23/2
interacting [2]  19/22 36/11
interaction [3]  19/19 20/21
 28/18
interactions [2]  24/1 25/24
interchangeably [1]  45/22
interest [4]  3/18 31/11 31/21
 46/14
interested [4]  10/9 16/16 32/3
 32/5
interests [2]  10/8 51/1
Internet [5]  28/13 44/10 45/17
 46/16 55/8
Internet sex offenders [1]
 45/17
interpersonal [1]  40/6
interpsychic [1]  35/4
interview [4]  9/5 9/6 50/5
 50/13
interviewed [1]  35/21
investigation [1]  59/21
investigators [1]  10/18
involved [1]  10/25
involving [3]  34/11 39/20 40/1
iPad [1]  31/3
is [148]
isn't [7]  13/20 17/3 19/11
 19/11 36/19 45/8 56/24
issue [8]  3/12 3/14 5/16 11/25
 13/2 45/12 45/12 48/5
issues [1]  25/19
it [79]
it's [49]  4/1 4/19 5/18 6/1 6/4
 10/24 12/11 13/5 13/7 13/9
 13/12 14/10 17/21 18/14 20/1
 20/5 23/2 23/24 25/8 25/24 26/1
 26/1 26/1 28/7 28/18 30/1 31/4
 35/4 36/8 36/8 36/20 37/1 37/1
 39/3 45/24 46/25 47/11 48/1

Case 1:15-cr-00544-CCB   Document 43   Filed 04/28/17   Page 68 of 74

**I**

it's... [11]   51/24 55/7 55/12
 57/11 57/19 57/19 58/5 58/5
 58/6 58/6 58/19
items [1]   50/1
its [2]   3/17 6/10
itself [2]   19/10 22/5
IV [2]   1/5 2/8

**J**

John [1]   24/12
John Paul [1]   24/12
Johns [2]   7/25 8/2
Johns Hopkins University [2]
 7/25 8/2
JUDGE [1]   1/11
judgment [2]   15/8 55/2
jury [1]   5/19
just [33]   3/13 3/20 5/2 5/11
 6/9 7/15 9/18 12/15 12/21 13/12
 13/19 16/9 20/5 22/14 22/23
 23/11 26/8 28/5 30/2 31/9 36/19
 37/9 39/10 40/18 45/25 48/12
 52/8 52/19 53/18 56/2 59/20
 60/1 60/18

**K**

K-R-A-F-T [1]   7/13
keep [1]   35/24
keeps [1]   25/14
kept [1]   12/21
Kik [19]   9/2 9/3 19/20 19/22
 19/24 20/18 23/7 23/8 24/2 24/7
 25/24 27/18 48/22 57/3 59/9
 59/17 59/23 59/24 60/14
Kik account [3]   59/17 59/23
 59/24
Kik application [1]   19/24
Kik chats [4]   20/18 24/2 27/18
 57/3
Kik community [1]   19/22
Kik conversations [1]   23/7
Kik messages [3]   9/2 9/3 48/22
Kik user account [1]   59/9
kind [7]   4/15 10/3 13/17 25/8
 32/2 55/12 55/15
know [59]   3/4 3/5 3/8 3/22 4/12
 4/19 5/2 6/2 9/21 11/3 13/5
 13/5 13/9 13/11 13/15 13/18
 13/18 16/24 20/18 22/1 22/1
 25/13 26/1 26/4 27/12 28/11
 28/12 30/17 30/17 30/24 31/1
 31/4 31/14 34/1 34/20 35/3 37/6
 37/19 37/24 45/10 46/17 48/2
 48/21 48/24 50/1 50/21 51/19
 52/18 52/24 53/1 53/3 53/10
 53/13 54/4 54/8 55/10 57/3
 60/24 60/25
knowledge [3]   9/11 20/19 56/6
knowledgeable [1]   22/2
known [1]   37/21
knows [1]   50/21
Kraft [32]   2/21 2/25 3/16 3/21
 3/22 4/11 5/4 5/10 6/23 7/4 7/9
 7/13 7/22 12/1 14/15 14/20
 17/16 18/17 19/24 38/15 41/5
 42/20 45/12 45/23 46/19 48/12
 48/15 52/8 53/18 56/6 58/12
 61/12
Kraft's [3]   3/7 6/18 18/13

**L**

labeled [2]   24/6 24/7
lack [1]   15/9
last [7]   3/17 7/12 25/3 32/6
 42/20 44/14 44/15
late [1]   60/4
later [4]   21/11 21/12 29/25
 32/23
law [2]   50/22 51/4
laying [1]   32/24
leading [2]   8/9 50/7
least [5]   39/18 39/24 40/7 40/8
 41/24
leaving [2]   31/18 32/15
leeway [1]   5/3
legal [1]   35/9
let [8]   3/22 14/13 25/9 27/1
 34/13 42/13 42/14 45/23
let's [1]   10/15
level [1]   13/11
lick [2]   25/9 36/13
licked [1]   46/22
licking [4]   35/17 46/12 46/21
 49/12
lie [1]   57/22
lied [1]   16/21
life [9]   21/4 26/5 26/7 26/11
 26/13 45/15 50/7 53/25 55/20
like [19]   5/17 14/1 15/2 20/8
 22/11 22/11 24/2 28/4 28/14
 28/16 33/16 35/12 39/4 40/15
 43/6 43/23 51/24 54/3 54/12
liked [1]   29/19
likelihood [1]   21/23
likely [2]   15/19 46/25
likes [1]   33/8
limitation [1]   17/9
line [6]   23/11 26/14 33/3 36/19
 36/20 53/22
lines [1]   30/10
list [1]   21/21
listed [2]   18/7 46/17
literature [1]   13/14
little [5]   4/19 28/16 33/16
 39/21 45/5
live [1]   2/21
living [1]   20/19
logging [1]   21/23
logs [2]   9/15 23/19
LOL [2]   34/7 34/8
Lombard [1]   1/24
long [2]   22/1 53/2
longer [3]   41/25 42/25 43/9
look [9]   6/24 10/25 12/8 17/19
 22/13 29/5 38/1 38/2 51/24
look/sound [1]   51/24
looked [1]   43/10
looking [8]   12/10 19/21 24/16
 27/13 28/12 29/4 31/8 42/1
looks [3]   18/25 19/2 22/11
loss [1]   56/7
lost [2]   54/4 55/2
lot [8]   19/11 28/3 28/4 28/14
 35/5 48/23 55/10 57/8
love [1]   36/15
lower [1]   31/11
lucky [1]   25/5

**M**

made [7]   28/25 29/5 32/18 33/13
 43/2 43/20 54/25

mail [10]   20/13 21/14 22/19
 57/16 59/22 60/14 60/19 60/22
 60/22 60/24
mailed [1]   60/17
mails [6]   22/13 22/14 22/22
 60/14 60/15 60/15
main [1]   8/8
major [1]   54/3
make [9]   6/22 9/16 9/18 11/2
 15/23 36/22 36/23 53/8 57/10
makes [3]   11/24 51/24 60/13
making [4]   23/20 30/14 49/19
 50/11
manifestation [1]   55/16
manner [1]   4/16
manual [1]   39/12
many [7]   25/23 27/13 30/6 31/17
 37/21 38/7 55/7
map [1]   16/4
March [1]   1/8
mark [1]   40/5
MARYLAND [3]   1/1 1/9 1/25
masturbated [1]   49/7
masturbating [1]   31/17
material [2]   23/6 41/24
materials [2]   29/24 49/11
matter [2]   2/7 61/16
matters [2]   5/11 29/22
Matthew [2]   1/20 2/11
Matthew Bileck [2]   1/20 2/11
may [10]   7/17 12/10 12/11 12/18
 13/2 14/3 43/2 48/16 51/12 60/3
maybe [8]   14/7 22/9 22/11 34/12
 36/6 45/19 47/2 52/2
me [23]   9/19 14/6 17/7 23/18
 27/1 27/16 27/25 29/21 34/13
 34/21 35/1 41/20 42/7 42/13
 43/13 45/23 51/22 51/25 54/1
 54/25 54/25 57/7 60/18
mean [11]   12/19 13/3 13/9 13/11
 14/5 16/1 36/1 48/19 52/3 53/5
 60/25
meaning [1]   46/3
mechanics [1]   34/22
medical [1]   8/25
medicating [1]   55/10
medication [1]   54/23
medications [3]   54/10 54/20
 56/8
meet [1]   41/4
meeting [1]   2/18
member [2]   8/4 56/7
members [5]   16/13 19/22 27/5
 51/3 51/4
memorandum [1]   13/23
men [3]   35/8 35/10 35/11
mental [1]   12/4
mentally [1]   55/23
mention [2]   40/19 55/21
mentioned [5]   11/15 29/3 52/20
 53/9 56/15
merely [2]   43/1 43/16
messages [6]   9/2 9/3 20/13 42/4
 48/22 53/7
messaging [1]   20/1
messed [1]   21/15
metadata [2]   38/8 38/11
methods [2]   6/12 13/20
Michael [3]   1/18 2/15 44/10
Michael Citaramanis [1]   2/15
Michael Setl [1]   44/10
Michael T. Citaramanis [1]   1/18

Case 1:15-cr-00544-CCB   Document 43   Filed 04/28/17   Page 69 of 74

**M**

microphone [1]  7/11
mid [2]  22/16 22/17
mid calf [1]  22/17
mid torso [1]  22/16
middle [4]  4/10 25/16 33/19
 33/20
might [8]  4/9 11/22 19/23 23/5
 43/10 54/20 60/4 60/8
mind [3]  12/21 18/5 33/10
minor [4]  26/24 44/4 44/7 45/8
minors [3]  27/3 31/11 36/9
minors' [1]  31/12
minute [2]  12/25 25/17
misreport [1]  58/1
missing [1]  10/10
misunderstood [1]  60/20
mode [1]  23/3
moment [2]  7/15 41/5
moniker [2]  24/9 24/12
month [5]  21/11 21/24 22/11
 43/4 43/9
month-old [1]  21/24
months [5]  39/18 39/24 41/25
 42/24 55/17
more [11]  6/19 10/9 17/17 21/4
 22/11 34/21 36/21 43/13 48/19
 54/13 55/12
morning [1]  2/20
most [4]  16/6 27/4 27/6 52/24
mother [7]  9/7 11/9 11/13 15/13
 50/5 53/24 54/15
motivated [3]  27/3 27/7 57/24
motivation [1]  57/22
move [2]  19/15 23/8
Mr. [53]  2/5 2/16 2/20 5/9 5/10
 6/16 11/5 12/13 14/8 14/13
 19/19 22/21 25/3 25/6 25/6 26/6
 26/12 28/22 29/3 30/19 31/17
 32/8 33/5 33/20 34/5 34/16
 35/12 36/3 42/17 44/1 44/20
 44/25 45/21 48/10 48/15 48/24
 49/6 49/11 49/14 49/20 50/6
 50/19 50/21 51/8 52/10 52/20
 53/19 56/17 57/21 58/11 58/19
 60/22 61/2
Mr. Citaramanis [3]  11/5 48/10
 58/11
Mr. Comment's [1]  25/6
Mr. Kraft [1]  5/10
Mr. Myers [10]  2/5 2/20 5/9
 6/16 14/8 14/13 28/22 32/8
 42/17 45/21
Mr. Myers' [1]  58/19
Mr. Steinhaus [31]  2/16 12/13
 19/19 25/3 26/6 26/12 29/3
 30/19 31/17 33/5 33/20 34/5
 34/16 35/12 44/1 44/20 44/25
 48/24 49/6 49/11 49/14 50/6
 50/21 51/8 52/10 52/20 53/19
 56/17 57/21 60/22 61/2
Mr. Steinhaus's [6]  22/21 25/6
 36/3 48/15 49/20 50/19
much [10]  5/24 10/24 12/19
 16/13 29/13 29/18 29/21 29/25
 54/13 58/12
multiple [5]  32/12 32/18 33/7
 46/22 46/23
musing [1]  33/7
mutually [1]  23/6
my [13]  2/18 8/6 8/13 11/4 17/3
 17/4 21/15 34/12 35/8 47/16
 57/19 58/24 59/14
Myers [12]  1/15 2/5 2/10 2/20
 5/9 6/16 14/8 14/13 28/22 32/8
 42/17 45/21
Myers' [1]  58/19
myself [1]  4/15

**N**

naked [2]  22/15 22/15
name [3]  7/12 7/12 20/4
nature [4]  53/11 53/12 53/13
 53/15
Naughty [2]  24/9 24/21
Naughty Daddy [2]  24/9 24/21
necessarily [1]  5/5
necessary [3]  4/1 6/23 7/2
need [6]  14/7 14/14 18/2 38/2
 44/22 51/19
needs [1]  20/4
negatives [1]  42/13
never [3]  29/10 33/10 59/19
nevertheless [1]  26/22
newest [1]  21/20
next [4]  25/7 25/7 34/5 51/21
night [1]  60/4
nitpicking [1]  20/20
no [38]  1/4 5/19 9/3 9/14 9/24
 10/3 11/8 11/10 14/13 15/5 17/2
 18/3 18/21 24/14 24/24 29/12
 31/23 36/12 37/19 40/19 44/3
 44/5 45/6 48/7 49/2 49/5 49/10
 49/14 50/21 53/13 53/14 55/23
 55/25 56/14 56/16 56/25 60/2
 61/3
No. [1]  2/9
non [1]  30/16
non-undercovers [1]  30/16
nonexclusive [1]  40/13
nonleading [2]  4/22 5/6
normalize [3]  31/22 32/1 32/10
NORTHERN [1]  1/2
not [96]
noted [1]  50/1
Nothing [3]  58/8 58/10 58/21
notice [1]  34/15
November [3]  21/7 21/14 60/9
November 8th [1]  21/7
now [31]  8/10 11/15 13/6 19/24
 20/25 21/1 21/17 22/20 23/16
 23/19 25/21 27/9 29/3 30/13
 31/1 33/12 34/10 37/13 38/15
 38/22 41/3 43/6 43/9 49/18
 50/14 51/11 51/12 51/23 52/8
 56/15 57/2
number [1]  30/6
numbers [7]  16/3 29/16 30/10
 37/6 37/16 37/19 39/14
numerous [1]  30/14

**O**

object [2]  11/22 45/18
objection [2]  13/7 47/18
objections [1]  6/3
objective [6]  41/16 41/21 42/2
 42/3 42/4 42/9
observations [1]  16/14
obtain [1]  59/21
obtained [2]  9/1 9/13
obvious [1]  26/14
obviously [2]  13/3 33/4
occasions [1]  46/22

occurred [1]  55/24
occurs [2]  34/4 49/12
offend [1]  15/20
offended [1]  3/23
offender [11]  31/1 33/5 33/17
 34/1 34/3 34/15 44/3 44/21 45/1
 46/16 47/22
offenders [11]  8/11 8/12 11/16
 11/21 14/22 14/23 15/4 35/24
 44/11 45/17 46/23
offense [1]  17/22
offenses [8]  16/2 16/5 16/5
 16/22 34/12 43/11 44/7 45/8
offer [1]  12/13
Office [1]  2/15
officer [7]  20/13 20/24 21/3
 24/13 25/13 27/21 33/17
Official [2]  1/24 61/20
offspring [1]  27/6
Oh [1]  34/20
Okay [24]  3/3 7/3 11/9 11/15
 15/10 15/16 23/19 28/7 28/8
 28/23 30/11 34/3 34/4 38/13
 41/6 46/24 48/9 49/18 52/3 53/9
 58/9 59/22 61/4 61/6
old [14]  21/24 23/14 24/21 25/3
 31/18 33/24 33/24 34/4 34/6
 34/7 37/22 46/10 56/13 56/24
older [4]  36/15 36/21 36/23
 40/8
one [11]  8/3 9/6 10/10 17/11
 17/12 28/5 30/16 52/8 53/23
 56/15 56/25
one-hour [1]  9/6
ones [3]  9/15 19/1 28/15
online [14]  11/1 23/3 25/25
 26/5 26/11 26/13 33/2 33/5 35/9
 35/11 35/24 44/7 45/7 53/15
online activities [1]  35/9
online fantasy [2]  33/2 33/5
online offenders [1]  35/24
only [8]  4/11 4/14 10/13 11/11
 34/2 37/14 54/18 58/6
open [1]  58/24
opinion [12]  6/24 12/13 14/9
 15/14 15/24 46/16 47/16 47/17
 47/21 47/25 48/2 57/19
opinions [3]  6/19 48/1 57/18
opportunity [4]  2/21 6/5 6/17
 14/11
opposed [1]  6/9
order [10]  5/5 6/8 11/21 14/22
 15/23 26/1 31/11 31/21 32/1
 32/10
other [50]  5/6 8/6 9/10 9/10
 9/12 10/14 11/12 12/4 13/16
 15/4 16/19 17/2 18/25 19/11
 19/22 21/12 22/22 23/9 25/22
 26/24 27/3 27/7 27/13 30/15
 30/18 32/5 32/18 34/1 34/3
 36/11 36/20 37/2 37/4 41/24
 42/2 43/21 46/13 46/23 47/1
 49/2 49/10 49/23 50/22 51/2
 51/23 53/14 54/11 55/4 55/19
 59/20
others [2]  23/3 49/15
otherwise [1]  57/8
out [9]  22/21 25/22 31/18 36/16
 37/7 44/6 45/7 50/6 54/5
over [12]  16/3 28/12 29/5 32/4
 37/5 38/3 38/5 39/18 39/24 43/9
 44/23 58/5

Case 1:15-cr-00544-CCB   Document 48   Filed 04/28/17   Page 70 of 74

**O**

overall [3]   12/3 12/22 58/5
overlapping [1]   32/14
overwork [1]   56/7
own [2]   27/5 37/14

**P**

p.m [2]   2/2 61/8
page [33]   8/19 12/8 19/17 20/10
 24/6 24/7 24/7 24/20 25/4 25/5
 25/7 25/13 25/16 27/18 27/22
 33/15 33/18 33/19 33/20 34/5
 34/9 36/15 38/19 38/22 39/16
 39/17 40/12 40/15 40/22 41/8
 43/23 43/25 52/24
Page 1 [3]   19/17 39/16 40/22
Page 17 [1]   27/18
Page 33 [1]   33/18
Page 42 [2]   33/15 34/9
Page 5 [2]   38/19 38/22
Page 6 [3]   12/8 20/10 43/23
Page 64 [1]   36/15
Page 697 [1]   39/17
Pages [1]   23/12
Pages 1 [1]   23/12
pants [2]   22/16 22/16
paper [1]   6/10
paperwork [1]   15/11
paragraph [7]   12/8 20/10 20/25
 21/11 22/13 42/21 43/25
Paragraph 10 [2]   20/10 20/25
Paragraph 11 [1]   21/11
Paragraph 13 [1]   22/13
Paragraphs [2]   20/11 20/12
Paragraphs 10 [1]   20/12
paraphilia [1]   41/14
part [17]   8/9 13/2 13/5 27/25
 30/22 31/9 35/4 39/3 48/21
 49/20 50/16 50/18 55/9 55/12
 57/19 58/5 58/5
particular [1]   13/20
particularly [4]   16/5 16/15
 16/16 44/8
parties [2]   17/13 17/21
partners [1]   30/20
party [1]   4/25
past [2]   11/16 15/3
patient [2]   15/17 15/19
Paul [1]   24/12
pedophile [3]   15/17 15/24 40/19
pedophilia [6]   38/20 38/24
 42/24 43/22 44/8 45/9
pedophilic [5]   39/2 39/6 39/16
 41/11 41/13
pedophilic disorder [5]   39/2
 39/6 39/16 41/11 41/13
pending [1]   16/25
penetrating [2]   36/12 36/14
penetrative [3]   36/4 36/9 36/24
penis [8]   26/17 26/20 31/18
 35/15 35/16 46/10 46/11 51/21
people [17]   11/11 16/15 16/23
 20/5 22/22 23/25 26/4
 26/10 27/2 29/7 35/21 55/4 55/6
 55/7 56/9 56/11
perhaps [5]   3/20 4/7 4/15 25/10
 51/17
period [6]   39/18 39/24 43/9
 54/14 55/19 59/12
persisted [1]   42/24
persistence [1]   43/3

person [11]   4/24 36/11 37/2
 44/2 44/8 45/8 47/10 47/14
 47/17 51/20 52/11
personal [1]   31/4
perspective [1]   53/21
perv [1]   21/3
pervy [1]   21/4
Ph.D [2]   7/9 61/12
phone [2]   6/21 19/20
photograph [1]   49/5
photographs [11]   3/18 3/21 3/24
 3/25 4/3 4/6 4/13 4/16 6/25
 27/9 27/10
physical [2]   35/12 51/20
pics [1]   22/19
picture [4]   31/2 31/2 31/5 31/7
pictures [10]   26/6 26/12 26/14
 26/16 32/19 35/16 45/15 46/12
 49/14 51/8
pile [1]   38/4
placed [2]   44/3 47/22
places [1]   55/3
placing [1]   46/10
Plaintiff [2]   1/3 1/14
planned [1]   36/7
play [9]   22/19 25/25 28/18
 28/19 30/22 36/10 37/1 57/5
 57/9
playing [2]   22/24 34/2
plays [2]   35/6 55/11
plea [6]   17/20 17/23 18/9 18/11
 46/2 50/19
please [13]   2/4 7/8 7/10 7/11
 7/12 7/15 25/6 27/20 39/15 41/1
 41/9 43/24 43/24
pled [1]   45/13
plenty [1]   27/2
point [9]   4/7 11/9 11/23 14/4
 20/23 28/25 29/21 53/22 54/1
pop [1]   31/14
porn [1]   30/9
pornographic [2]   10/11 16/16
pornography [24]   10/6 10/7
 10/15 19/21 19/23 22/21 22/23
 23/5 29/4 29/8 29/11 29/13 30/6
 30/20 31/3 32/1 37/9 37/11
 37/12 37/15 37/17 38/3 44/6
 45/7
portion [2]   2/11 17/20
pose [4]   13/25 44/2 47/9 47/13
posed [2]   15/4 28/19
poses [1]   12/14
position [6]   3/5 8/6 56/24
 57/21 57/24 61/1
possessed [1]   10/1
possibly [1]   3/18
posted [6]   21/3 21/7 21/20
 21/20 22/5 22/8
postings [4]   22/1 52/22 52/25
 53/7
posts [1]   53/3
potential [1]   14/22
practitioners [2]   11/20 14/21
precisely [1]   43/4
predated [1]   20/17
preference [1]   3/25
preferred [1]   54/13
Preliminarily [1]   3/1
preoccupation [1]   56/20
preparation [1]   9/5
preparing [1]   41/23
prepubertal [1]   41/19

prepubertal children [1]   41/19
prepubescent [17]   29/7 29/18
 37/23 37/25 38/25 39/1 40/2
 40/24 41/15 41/19 42/6 43/15
 47/12
prepubescent child [1]   40/2
prepubescent children [7]   38/25
 39/1 40/24 41/15 42/6 43/15
 47/12
prepubescent images [2]   37/23
 37/25
prerecorded [1]   42/4
prescribed [1]   54/9
presence [1]   49/8
present [3]   1/19 5/16 19/18
presented [1]   49/3
pretty [1]   55/14
previous [2]   53/3 54/2
previously [1]   22/8
primarily [1]   2/19
primary [2]   12/17 12/22
prior [13]   9/11 15/16 15/22
 16/2 16/9 16/20 21/7 22/4 22/5
 38/12 43/11 56/16 60/23
privately [1]   4/14
probably [5]   17/7 25/19 54/2
 54/6 55/22
probationary [2]   13/4 14/2
problem [2]   19/18 60/16
proceed [3]   2/24 4/22 5/6
proceeding [2]   2/23 5/14
proceedings [1]   61/16
process [2]   29/25 53/19
produce [2]   8/16 9/25
produced [1]   9/22
producing [1]   45/15
production [1]   27/15
professional [1]   15/7
proffer [2]   30/2 31/2
proffering [1]   29/21
proof [1]   31/23
prop [1]   27/11
proper [1]   6/8
proponent [1]   6/11
proposition [1]   16/4
prosecution [1]   57/15
prove [1]   17/3
provided [6]   9/4 9/4 9/16 18/19
 23/21 29/25
provides [1]   15/13
psychiatric [2]   39/12 39/13
psychiatrist [2]   13/10 54/8
psychiatrists [1]   3/9
psychiatry [1]   8/8
psychological [3]   45/2 45/21
 53/21
psychologist [2]   13/10 53/21
psychologists [1]   3/9
psychology [1]   31/14
public [4]   1/18 2/15 13/25
 14/23
publication [1]   4/16
published [1]   44/10
pulled [3]   22/16 22/16 22/17
punishment [1]   57/23
purpose [1]   45/14
purposes [5]   3/10 45/20 45/20
 46/2 46/3
put [4]   6/8 24/4 32/19 41/2
putting [5]   26/16 26/19 35/15
 46/11 46/11

Case 1:15-cr-00544-CCB Document 43 Filed 04/28/17 Page 6/14 of 74

**Q**

qualifier [1]  38/22
qualify [6]  38/19 38/23 40/23
 41/3 43/21 51/22
question [12]  5/18 5/21 22/23
 32/7 42/12 42/17 42/22 45/24
 47/6 47/7 47/25 53/2
questions [12]  4/23 5/6 6/3
 6/17 48/8 48/10 48/11 48/21
 52/8 55/25 59/8 60/7
quite [4]  42/12 54/16 54/17
 54/17
quote [1]  40/23

**R**

raise [2]  7/8 36/6
raising [1]  23/21
rare [2]  27/6 36/8
rather [2]  44/20 44/25
RCR [1]  61/11
RDR [4]  1/23 61/11 61/14 61/18
re [2]  4/16 15/20
re-offend [1]  15/20
re-publication [1]  4/16
reaction [2]  54/20 56/12
read [19]  13/23 20/25 24/3 25/6
 25/8 26/21 27/20 28/1 28/5 28/7
 30/14 33/19 39/15 39/21 40/18
 41/9 42/20 43/24 44/14
reading [17]  21/1 21/3 24/21
 25/8 25/18 25/20 28/14 33/20
 36/12 38/23 39/18 39/24 41/12
 42/23 44/1 44/19 44/24
ready [2]  2/24 36/21
real [7]  24/19 26/5 26/6 26/11
 26/12 45/15 46/16
real-life [1]  45/15
reality [1]  26/1
realize [1]  16/3
really [10]  3/13 23/2 23/4
 33/19 36/25 37/21 46/17 48/5
 54/25 55/18
Realtime [1]  61/19
reason [3]  15/7 22/8 57/22
reasons [2]  27/3 27/7
recall [1]  36/17
recalling [1]  11/17
received [1]  8/10
receiving [2]  23/14 23/16
recent [1]  52/24
recidivism [1]  11/21
recognize [1]  39/4
recommend [2]  44/19 44/24
record [6]  3/2 7/12 13/1 18/11
 39/10 61/16
records [1]  9/1
recovered [3]  29/11 30/5 49/6
recurrent [1]  39/19
redacted [1]  9/2
redirect [3]  14/11 56/2 56/4
reduce [1]  57/22
refer [1]  31/14
reference [3]  50/22 52/10 53/14
references [2]  30/14 33/12
referred [3]  5/17 38/15 54/11
referring [6]  17/18 22/24 34/13
 35/14 35/24 37/23
reflected [1]  21/11
region [1]  22/18
register [1]  44/25
Registered [1]  61/19

registering [1]  44/20
registry [2]  44/23 47/22
related [1]  30/6
relationship [3]  16/12 44/6
 45/6
relevant [1]  10/7
reliability [1]  15/9
reliable [2]  15/13 57/17
relied [7]  8/16 8/21 17/12 18/8
 49/23 56/15 57/16
relies [1]  5/25
rely [7]  5/21 8/15 15/11 38/18
 55/6 57/4 59/11
relying [1]  13/24
remember [2]  29/16 31/4
reoccurrent [1]  39/25
repeat [1]  32/6
replied [1]  21/13
report [43]  3/7 5/18 5/25 6/6
 6/20 6/24 8/16 8/19 8/20 11/24
 12/22 13/6 13/24 14/12 17/12
 18/7 18/13 19/16 19/17 20/9
 22/20 23/1 23/11 23/13 24/5
 29/13 29/22 30/4 38/19 38/23
 38/24 39/1 40/22 40/24 41/23
 43/23 48/1 50/2 50/13 50/16
 51/1 56/24 57/25
report/evaluation [1]  18/13
reported [7]  1/22 16/6 19/16
 19/16 49/20 51/3 54/15
reporter [5]  1/24 39/22 61/19
 61/19 61/20
reporting [2]  29/3 29/4
reports [2]  8/24 56/16
request [3]  9/16 11/2 14/3
required [2]  5/23 15/23
research [4]  9/11 44/5 44/9
 45/6
reserve [1]  3/20
respect [3]  4/18 12/7 53/18
respond [2]  34/5 37/2
response [7]  22/13 22/14 22/18
 22/23 24/14 25/2 34/2
responses [1]  48/21
responsibility [1]  8/1
return [1]  27/10
returning [1]  34/11
review [4]  5/24 9/15 17/16
 23/19
reviewed [4]  20/9 29/10 41/22
 42/9
right [14]  2/13 2/17 2/18 5/8
 7/3 7/8 14/5 19/12 21/8 23/8
 25/12 25/19 56/3 58/19
risk [19]  8/12 8/13 8/15 11/16
 11/21 12/2 12/12 12/14 13/9
 13/11 13/16 14/7 14/21 14/22
 15/3 15/16 44/2 47/9 47/13
risk assessment [7]  8/15 12/2
 12/12 13/9 13/11 13/16 14/21
risk assessments [3]  8/12 8/13
 11/16
risk evaluations [1]  15/16
role [12]  17/3 17/4 25/25 28/18
 28/19 30/22 35/6 36/10 37/1
 55/11 57/5 57/9
role-play [8]  25/25 28/18 28/19
 30/22 36/10 37/1 57/5 57/9
role-plays [2]  35/6 55/11
roles [1]  8/3
Rule [1]  4/21
Rule 611 [1]  4/21

Rules [2]  4/21 5/14

**S**

S-E-T-L [1]  44/12
safety [1]  28/13
said [17]  21/14 23/23 23/24
 26/9 26/10 27/20 36/12 37/20
 42/3 42/7 47/1 48/16 48/24
 52/22 54/21 57/2 57/3
same [10]  14/4 23/15 25/17
 28/24 32/25 36/1 57/14 58/3
 59/17 59/23
saw [3]  34/19 54/8 60/18
say [23]  4/11 10/15 18/2 21/25
 23/12 24/24 25/3 26/10 26/11
 33/2 37/16 37/19 38/22 40/22
 41/21 45/5 47/9 49/19 53/11
 54/22 56/10 56/14 59/19
saying [10]  21/2 23/16 28/10
 32/20 34/2 34/12 36/19 46/22
 60/16 61/5
says [11]  14/6 16/25 19/18
 24/21 25/5 28/14 33/20 34/3
 34/4 35/1 36/15
scholarly [1]  44/9
scope [4]  10/11 10/25 11/23
 17/22
screens [1]  4/13
search [6]  8/25 19/9 20/9 53/6
 53/6 60/12
seated [2]  2/4 7/10
second [6]  3/15 12/8 24/7 40/15
 41/7 43/25
section [6]  5/23 19/17 21/21
 21/24 39/7 41/10
Section 3553 [1]  5/23
see [29]  6/25 9/17 9/19 10/21
 10/22 12/19 14/14 22/12 23/19
 24/20 24/21 25/23 26/3 29/12
 30/24 30/25 31/5 32/12 32/12
 32/18 32/23 33/12 34/14 35/5
 36/3 41/24 45/23 59/6 61/6
seeing [1]  21/24
seeking [5]  21/3 22/21 25/21
 44/6 45/7
seen [14]  9/20 9/22 9/25 10/3
 17/25 18/25 29/20 30/18 30/24
 33/7 50/17 54/24 55/4 55/15
seized [1]  10/2
self [3]  39/1 49/20 55/10
self-medicating [1]  55/10
self-report [1]  39/1
self-reported [1]  49/20
send [1]  60/23
sending [4]  22/22 23/13 32/19
 46/13
sends [1]  22/15
sense [1]  53/8
sent [6]  22/18 29/7 31/2 32/23
 37/3 37/7
sentence [6]  12/9 25/8 41/9
 43/24 44/14 44/15
sentencing [8]  1/13 2/12 2/19
 5/14 5/24 6/10 13/23 17/1
separate [2]  27/13 28/20
series [2]  20/12 37/12
set [1]  60/2
Setl [2]  44/10 44/12
setting [3]  6/2 42/1 45/10
several [1]  30/15
sex [14]  8/11 8/12 11/16 11/21

Case 1:15-cr-00544-CGB    Document 43    Filed 04/28/17    Page 72 of 74

## S

sex... [10]  14/22 15/4 16/5
 16/5 36/4 44/3 44/11 44/21
 45/17 47/22
sex offender [1]  44/21
sex offender registry [2]  44/3
 47/22
sex offenders [2]  8/11 14/22
sex offenses [2]  16/5 16/5
sexual [52]  8/7 10/8 16/12
 16/22 16/22 23/13 26/24 27/4
 31/11 31/12 31/21 31/22 32/2
 34/12 35/17 38/24 39/19 39/19
 39/20 39/25 40/1 40/4 40/5
 40/24 41/15 41/18 43/1 43/3
 43/11 43/14 44/4 44/5 44/7 45/1
 45/8 45/14 45/19 45/20 46/3
 46/14 49/15 51/1 51/9 51/13
 51/14 51/19 51/20 51/22 52/1
 55/8 56/13 56/25
sexual abuse [3]  35/17 56/13
 56/25
sexual act [5]  49/15 51/9 51/13
 51/14 51/19
sexual activities [1]  55/8
sexual activity [4]  40/1 51/20
 51/22 52/1
sexual arousal [3]  27/4 43/11
 43/14
sexual attraction [7]  38/24
 40/24 41/15 41/18 43/1 43/3
 44/4
sexual conduct [2]  31/12 31/22
sexual contact [5]  32/2 45/14
 45/19 45/20 46/3
sexual feelings [1]  26/24
sexual history [2]  16/22 44/5
sexual images [1]  23/13
sexual interest [3]  31/11 31/21
 46/14
sexual interests [2]  10/8 51/1
sexual offender [1]  45/1
sexual offenses [4]  16/22 34/12
 44/7 45/8
sexual urges [4]  39/19 39/25
 40/4 40/5
sexuality [2]  8/5 8/10
sexually [13]  11/1 26/23 27/16
 29/15 32/3 32/5 32/24 33/13
 37/4 39/25 42/5 42/10 47/11
share [3]  19/23 35/21 49/15
shared [3]  46/14 49/6 49/7
sharing [1]  23/6
she [5]  25/9 36/15 36/21 36/22
 50/16
shirt [1]  22/16
short [2]  55/19 59/12
should [13]  5/19 5/21 6/20
 12/15 12/21 24/6 41/2 42/14
 44/2 47/21 52/2 52/2 55/21
shoulder [1]  28/12
shouldn't [2]  28/17 57/16
show [3]  4/6 4/13 23/6
showing [3]  30/20 31/1 32/1
shown [5]  3/24 3/25 5/4 5/20
 23/9
shows [2]  5/24 31/7
sic [2]  36/23 44/19
side [1]  54/23
signed [2]  17/14 46/20
significant [4]  16/17 21/24

significantly [1]  55/22
53/23 55/15
signs [1]  42/24
similar [9]  18/25 19/2 19/5
 23/14 23/17 43/12 50/22 51/4
 53/15
since [3]  38/24 40/23 53/25
sir [2]  7/5 7/22
sitting [1]  11/5
situation [1]  55/24
six [7]  39/18 39/24 41/25 42/24
 43/4 43/9 55/17
six-month [2]  43/4 43/9
skeptical [1]  58/3
sleep [2]  55/22 56/7
sleep-deprived [1]  55/22
slow [1]  44/22
slower [1]  39/22
so [58]  2/23 5/1 5/7 9/3 9/20
 10/17 11/11 13/2 13/18 14/20
 15/10 16/9 16/19 16/25 17/8
 17/10 18/7 18/14 18/23 19/3
 19/13 20/8 20/20 21/23 22/3
 22/7 24/18 25/20 26/3 27/15
 28/10 30/1 33/5 33/19 34/20
 34/20 38/7 40/11 40/15 41/7
 43/12 43/20 45/5 49/5 50/21
 50/25 54/6 54/25 55/16 55/17
 55/22 55/22 57/4 57/6 57/10
 59/22 60/21 60/21
some [19]  6/6 6/17 9/21 14/24
 19/15 21/17 24/4 25/19 27/1
 28/15 31/13 46/17 53/1 53/23
 55/7 59/7 60/3 60/4 61/1
somebody [3]  10/25 23/5 27/10
somehow [1]  3/7
someone [3]  15/24 56/12 56/22
something [4]  29/17 36/7 36/16
 54/19
sometimes [2]  31/13 31/14
sons [2]  33/13 34/11
soon [1]  32/16
sorry [13]  18/2 18/4 20/11
 24/16 24/23 24/25 27/22 32/4
 33/16 39/21 39/23 44/22 52/14
sort [9]  5/17 9/12 20/20 21/1
 32/13 35/4 49/12 50/17 50/18
sorts [2]  15/23 37/16
sound [2]  51/24 55/23
sounded [2]  53/25 54/3
source [3]  8/15 17/11 23/17
sources [9]  8/20 9/10 9/13
 15/10 16/19 17/10 19/11 49/23
 50/4
space [2]  38/8 38/12
span [1]  37/5
spanning [1]  23/12
speak [1]  7/11
Special [2]  1/20 2/11
Special Agent [2]  1/20 2/11
specific [8]  3/21 9/14 12/20
 15/6 17/17 30/9 48/19 53/12
specifically [8]  3/16 4/25 8/11
 12/1 17/21 19/21 20/10 27/16
specifics [1]  15/22
spell [1]  7/12
spoken [1]  52/19
spreading [1]  35/16
square [1]  26/25
stage [1]  27/9
stand [2]  47/10 47/13
start [3]  20/20 36/4 44/23

starting [3]  20/10 28/3 44/18
state [5]  13/17 31/8 41/2 54/6
 55/1 55/23
stated [2]  29/10 44/3
statement [7]  8/22 17/14 18/15
 19/10 22/7 42/10 59/8
statements [1]  58/4
STATES [4]  1/1 1/3 1/16 2/7
Static [2]  14/25 14/25
Static-2002 [1]  14/25
Static-99 [1]  14/25
statistically [1]  27/4
status [1]  3/16
stay [2]  22/1 53/2
STEINHAUS [36]  1/5 2/8 2/16
 12/13 19/19 21/13 25/3 25/16
 26/6 26/12 29/3 30/19 31/17
 33/5 33/20 34/2 34/5 34/16
 35/12 44/1 44/20 44/25 48/24
 49/6 49/11 49/14 50/6 50/21
 51/8 52/10 52/20 53/19 56/17
 57/21 60/22 61/2
Steinhaus's [7]  22/21 23/4 25/6
 36/3 48/15 49/20 50/19
stenographic [1]  61/15
step [2]  7/5 58/17
stepping [2]  43/19 45/5
stepsister [1]  54/5
still [4]  25/9 46/16 47/21
 47/25
stimuli [1]  56/12
stipulated [3]  17/13 46/19
 59/10
strategies [2]  45/3 55/7
Street [1]  1/24
stricken [1]  5/19
submission [2]  5/24 6/10
substantial [9]  35/11 37/8
 37/10 37/18 41/16 41/21 42/2
 42/4 42/9
substantiated [1]  53/24
such [3]  20/3 50/5 57/22
suffering [1]  54/3
sufficient [2]  15/13 16/10
suggesting [1]  60/7
summarize [1]  21/2
support [1]  54/12
sure [20]  3/11 4/8 5/1 7/18
 9/18 12/24 13/13 17/17 27/25
 28/15 31/7 36/22 36/23 39/9
 45/11 48/19 51/12 53/11 54/9
 60/24
suspected [2]  50/17 51/3
sustained [2]  43/3 47/19
SWORN [1]  7/9
symptoms [1]  42/24
system [1]  17/6

## T

T. [1]  1/18
Tab [2]  17/19 24/3
Tab 5 [1]  24/3
Tab 6 [1]  17/19
taboo [2]  21/4 21/5
tabooness [1]  35/2
tag [1]  34/12
tag-team [1]  34/12
take [8]  16/11 16/25 26/6 28/17
 33/16 36/16 57/14 58/3
taken [4]  3/5 6/4 49/14 51/8
takes [1]  60/21
taking [5]  9/12 11/25 35/16

Case 1:15-cr-00544-CCB Document 43 Filed 04/28/17 Page 73 of 74

**T**

taking... [2]   46/12 56/7
talk [7]   11/9 16/23 20/6 34/6
 34/7 36/22 54/12
talked [5]   9/21 11/12 16/21
 21/14 52/11
talking [8]   11/11 15/12 17/10
 32/4 38/6 46/6 46/7 59/11
teach [1]   8/4
team [1]   34/12
teen [1]   29/4
teen pornography [1]   29/4
teens [2]   28/5 28/15
telephone [1]   3/16
tell [3]   16/23 34/21 51/17
telling [4]   25/9 25/15 47/2
 56/21
tells [1]   34/1
term [1]   51/18
terms [17]   9/11 11/11 13/16
 14/15 20/21 24/19 29/14 30/5
 30/9 38/11 48/15 49/18 51/8
 52/22 52/23 56/21 60/5
testified [3]   15/3 23/11 48/20
testify [1]   61/1
testimony [7]   2/21 3/7 4/22 6/2
 56/19 57/11 57/14
testimony's [1]   6/4
tests [5]   11/19 13/16 14/21
 15/6 15/8
texting [1]   25/19
than [14]   5/6 9/10 11/12 12/3
 16/20 27/3 35/23 36/21 40/8
 41/25 43/9 43/21 44/20 44/25
Thank [14]   2/6 2/13 2/17 5/8
 7/5 7/14 14/17 28/25 31/24 48/9
 58/12 58/13 58/20 61/7
that [404]
that's [49]   2/22 6/1 6/14 6/24
 10/13 10/17 11/14 11/18 11/24
 12/10 12/17 13/9 16/11 19/3
 21/25 22/2 23/18 24/15 26/14
 29/9 31/24 32/6 33/2 33/3 34/20
 36/19 36/25 40/20 45/12 46/24
 47/4 47/6 47/19 49/1 49/4 49/22
 49/25 50/9 50/12 50/20 50/24
 52/19 55/17 56/14 56/18 57/10
 57/20 59/19 61/5
their [11]   3/21 15/25 16/1
 16/14 16/16 16/22 27/5 28/16
 35/5 35/21 46/14
them [12]   5/3 14/24 16/14 16/18
 22/25 27/7 30/14 32/19 34/17
 46/13 46/19 56/21
theme [1]   34/11
themselves [3]   9/22 24/2 34/16
then [12]   7/3 8/6 14/7 18/17
 18/25 23/5 28/19 31/2 33/23
 42/17 54/14 59/6
therapy [2]   54/12 54/12
there [55]   3/1 4/2 4/9 5/1 6/13
 9/10 9/12 9/19 10/22 15/6 19/4
 19/10 20/6 23/23 25/19 27/2
 28/15 30/8 31/6 36/8 37/14
 37/14 38/2 38/11 38/22 40/11
 40/20 41/2 42/2 42/4 42/9 43/2
 43/14 44/5 46/1 46/2 46/5 49/5
 49/10 49/14 50/13 50/16 51/2
 52/5 52/6 52/8 52/9 53/12 53/23
 54/14 54/19 56/16 60/3 60/11
 61/1

there's [18]   4/23 4/24 5/19
 8/14 16/10 24/4 26/4 26/10
 29/21 31/23 40/18 41/21 45/6
 45/19 49/2 53/14 59/13 60/2
therefore [4]   44/16 44/18 44/19
 44/24
these [20]   6/12 6/19 15/6 15/8
 20/17 24/1 24/18 25/13 25/24
 26/16 30/15 32/13 35/5 35/12
 40/4 46/13 55/2 55/3 55/19 58/7
they [22]   3/5 6/3 15/9 23/8
 26/5 26/19 32/11 34/17 34/18
 35/23 35/25 35/25 36/1 38/9
 38/10 48/24 52/18 53/2 55/5
 56/10 56/25 60/17
they're [7]   5/1 24/2 35/25 36/1
 46/19 53/1 56/10
thing [3]   10/10 29/16 32/6
things [16]   3/1 3/15 10/16 21/4
 23/23 26/25 46/15 46/17 47/1
 48/15 48/23 49/2 50/6 51/23
 56/8 56/15
think [45]   3/8 3/12 3/18 4/1
 4/9 4/11 4/15 4/16 5/4 5/5 5/13
 5/16 5/23 6/1 6/21 6/21 6/22
 11/23 11/24 12/1 12/15 12/18
 12/21 13/8 14/8 16/9 18/13 23/2
 23/24 24/4 24/15 28/25 35/1
 42/14 42/21 43/16 45/18 45/21
 46/25 47/4 53/2 54/11 55/17
 57/16 57/24
thinking [1]   36/14
thinks [1]   28/13
this [69]
those [35]   4/14 14/22 15/2 15/2
 19/11 22/12 23/8 25/23 26/25
 28/20 30/10 30/18 31/12 31/20
 32/24 34/24 36/25 37/9 37/13
 37/16 37/19 37/22 37/23 46/15
 46/17 48/16 48/18 48/24 49/2
 50/4 50/10 50/10 55/14 56/8
 56/12
though [2]   3/1 52/18
thought [1]   55/14
three [3]   8/5 39/15 55/2
through [7]   19/19 20/11 20/12
 22/10 25/24 30/18 55/11
throughout [2]   13/23 22/20
till [1]   53/16
time [16]   3/8 10/1 17/7 18/14
 22/10 24/19 32/14 33/4 54/14
 55/19 58/14 59/3 59/12 59/17
 59/23 60/4
times [2]   24/18 55/7
today [2]   6/2 6/15
toddler [1]   35/18
told [5]   9/19 23/18 30/19 30/25
 60/18
tomorrow [3]   2/20 58/22 61/6
too [2]   34/4 49/23
took [6]   6/13 26/12 26/14 37/13
 49/6 50/25
tools [7]   11/19 11/20 13/16
 13/20 14/20 15/2 15/2
top [4]   21/21 25/7 34/5 52/24
torso [1]   22/16
touch [1]   35/15
traffic [1]   21/25
training [3]   8/9 8/10 15/7
transcript [1]   61/15
transient [2]   43/1 43/17
treat [1]   57/10

treatment [2]   8/11 47/23
trip [1]   37/9
trivial [1]   37/17
true [2]   57/3 57/6
truth [3]   16/23 17/4 47/3
try [3]   4/17 16/12 23/2
trying [5]   5/16 13/21 23/25
 42/15 55/11
turn [13]   8/19 19/17 20/8 24/2
 24/6 27/18 33/15 39/4 40/15
 41/7 43/23 55/6 55/8
turned [1]   29/8
two [14]   5/11 25/25 26/25 27/18
 28/20 30/15 33/21 34/24 37/5
 37/9 38/5 40/11 45/22 54/14
two-day [1]   37/5
type [3]   3/14 13/16 31/24
typeface [1]   19/2
types [4]   10/24 31/20 34/24
 40/11
typically [3]   4/22 8/14 10/11
typo [1]   25/10

**U**

U.S. [1]   2/9
U.S. Attorney [1]   2/9
UC [1]   23/15
Uh [12]   15/1 17/24 18/1 20/7
 21/10 22/6 24/8 24/11 24/22
 29/6 40/17 52/13
Uh-huh [12]   15/1 17/24 18/1
 20/7 21/10 22/6 24/8 24/11
 24/22 29/6 40/17 52/13
unable [1]   38/8
unallocated [1]   38/7
under [8]   3/6 4/21 5/23 16/6
 16/6 17/4 41/4 57/25
under-convicted [1]   16/6
under-report [1]   57/25
under-reported [1]   16/6
underage [3]   19/21 19/23 23/5
undercover [21]   19/20 20/13
 20/24 21/2 22/4 22/18 24/12
 25/2 25/14 25/14 27/20 33/17
 52/9 52/11 53/10 53/15 60/8
 60/14 60/15 60/16 61/1
undercovers [1]   30/16
underlie [1]   17/22
underlies [1]   14/8
understand [19]   4/23 5/3 6/16
 6/18 12/17 13/6 19/3 20/1 20/3
 26/8 31/5 34/24 42/12 45/2
 45/24 46/7 47/5 48/4 48/7
understanding [4]   2/18 34/10
 40/21 51/17
understood [1]   45/23
unfamiliar [1]   52/23
unfortunately [2]   27/10 54/11
unique [2]   37/15 55/15
unit [1]   8/7
UNITED [4]   1/1 1/3 1/16 2/7
United States [1]   2/7
university [4]   7/25 8/2 8/3 8/4
unless [1]   60/19
unlikely [1]   6/23
unpack [1]   45/5
unsupported [1]   6/8
until [3]   5/4 36/21 38/8
unusual [2]   4/19 54/16
up [21]   5/10 7/5 8/9 12/24
 13/17 14/14 19/4 21/15 22/16
 28/15 34/17 35/1 35/16 50/7

Case 1:15-cr-00544-CCB   Document 43   Filed 04/28/17   Page 74 of 74

**U**

up... [7]   52/11 52/24 53/2
 53/16 54/1 55/5 60/2
upon [4]   3/9 12/2 17/12 57/16
urges [4]   39/19 39/25 40/4 40/5
us [1]   28/16
use [6]   3/20 15/8 16/11 16/17
 16/19 57/17
used [6]   11/20 14/21 15/2 24/12
 27/10 60/22
user [4]   20/3 20/4 21/23 59/9
users [2]   23/20 32/18
using [3]   3/18 13/16 45/21
usually [5]   10/13 10/17 10/18
 25/24 57/1
UTC [2]   24/18 60/4
utilized [1]   21/12

**V**

vagina [3]   46/10 46/12 46/12
value [1]   17/1
variety [3]   16/19 23/23 55/6
various [2]   8/23 9/2
vein [1]   25/17
verified [1]   37/25
versus [2]   2/8 45/20
very [16]   6/1 13/9 13/10 13/15
 21/25 22/2 25/5 27/6 27/6 36/8
 53/25 54/16 55/19 56/2 57/9
 58/12
victim's [1]   11/9
victims [1]   56/21
video [2]   49/5 49/14
videos [3]   37/11 49/10 51/8
view [4]   6/7 45/11 48/17 58/3
visual [2]   29/12 51/7
visual imagery [1]   29/12
volume [3]   1/13 10/15 29/17
volumes [1]   38/10
vulnerabilities [1]   45/2

**W**

want [13]   2/5 4/6 8/19 13/19
 14/6 25/20 27/25 28/16 30/2
 48/10 58/15 58/15 58/20
wanted [11]   2/20 3/2 3/22 5/11
 9/18 20/23 28/4 36/4 36/22
 36/22 54/23
wanting [1]   23/21
wants [1]   13/22
warrant [4]   8/25 19/10 20/9
 60/12
was [96]
wasn't [6]   4/12 18/7 18/21
 36/20 38/12 57/6
way [2]   23/24 60/21
ways [3]   27/13 54/16 55/10
we [32]   2/23 2/24 3/8 3/17 3/18
 4/7 4/17 6/25 14/7 16/7 16/24
 17/10 18/10 18/14 21/14 25/18
 27/12 28/17 30/3 30/5 30/8 30/9
 30/13 37/19 37/20 42/14 42/17
 46/17 56/19 59/11 60/6 60/24
we'll [3]   6/25 7/3 41/5
we're [8]   2/18 14/1 14/2 24/3
 45/19 48/1 58/22 61/5
we've [3]   9/21 20/19 59/7
Wednesday [1]   1/8
week [2]   3/17 55/22
weeks [10]   21/15 22/4 22/5
 52/12 52/19 53/10 53/16 54/5

54/15 60/17
weight [1]   5/22 42/20
well [28]   5/13 6/16 9/5 17/8
 18/10 18/17 21/1 29/16 33/3
 33/15 33/24 34/4 41/5 41/24
 42/1 42/18 42/20 43/8 46/1
 47/25 48/2 48/2 48/20 51/14
 51/19 53/23 59/1 59/8
went [2]   54/8 55/2
were [44]   3/23 8/21 9/3 9/4
 9/10 9/12 9/12 9/15 9/22 10/1
 10/8 17/10 18/19 19/8 19/16
 21/4 23/21 23/23 23/23 26/11
 30/5 30/8 32/4 36/19 37/3 37/8
 37/13 37/22 38/7 38/9 38/10
 42/15 49/3 49/10 50/7 51/1
 51/23 51/25 52/9 55/14 59/11
 60/1 60/6 60/7
what [73]
what's [11]   4/2 16/17 16/17
 23/17 29/22 31/5 38/15 51/17
 52/4 52/5 52/6
whatever [3]   14/11 21/21 58/25
whatsoever [1]   55/23
when [26]   8/14 8/14 16/23 17/10
 21/20 23/16 25/23 28/10 28/12
 28/13 28/19 31/5 33/20 34/1
 34/3 34/3 36/3 36/14 36/14
 36/15 38/9 53/9 54/5 55/23
 55/24 57/6
where [17]   3/17 3/18 4/20 4/23
 6/25 8/4 12/17 14/5 20/5 24/21
 30/19 30/25 32/20 33/3 53/22
 54/16 55/2
whether [13]   5/1 5/18 12/11
 12/13 14/10 22/23 33/8 40/19
 48/5 48/24 51/3 52/18 52/23
which [22]   8/7 8/16 8/21 8/23
 8/25 12/2 13/22 17/13 20/8
 21/12 23/6 27/11 27/25 29/18
 31/2 38/10 39/16 42/21 44/15
 53/6 54/12 59/11
who [23]   11/5 19/22 21/4 23/5
 23/15 25/15 27/2 27/3 31/10
 31/20 33/17 34/15 35/8 35/10
 35/11 41/14 41/14 44/10 46/13
 46/15 52/11 54/9 55/4
who's [5]   6/5 16/21 16/25 17/6
 57/15
whole [2]   13/8 54/25
whom [1]   30/16
whose [1]   23/20
why [7]   6/1 6/14 12/24 28/17
 45/17 53/19 55/17
wife [3]   32/15 50/14 50/14
will [6]   31/14 34/12 36/13 55/6
 55/8 59/6
WILLIAM [2]   1/5 2/8
William Henry Steinhaus [1]   2/8
willing [1]   19/23
wish [5]   16/24 29/17 37/21 41/2
 47/23
withdraw [2]   33/10 47/7
within [5]   8/1 25/17 46/3 46/3
 54/2
without [4]   6/11 15/22 25/9
 28/15
witness [5]   4/24 5/5 7/17 58/18
 61/11
wondering [1]   25/14
word [1]   28/17
words [1]   22/3

work [2]   8/9 17/9
working [2]   54/8 55/21
works [2]   52/23 53/4
world [3]   24/19 35/12 46/16
worried [1]   56/21
worry [1]   24/18
would [47]   3/19 3/23 3/24 4/14
 4/17 5/1 5/5 6/23 7/1 10/5
 12/12 19/5 19/7 21/25 27/8
 29/17 29/19 29/19 30/22 31/21
 32/3 32/6 32/10 32/15 32/16
 33/2 36/10 37/10 37/16 38/3
 38/19 38/23 41/2 41/21 42/21
 43/11 44/19 44/24 45/18 49/19
 51/15 51/15 51/19 53/3 53/8
 54/12 59/11
wouldn't [9]   10/16 18/25 30/17
 30/24 36/22 38/4 51/25 56/10
 56/14
write [1]   19/18
written [2]   6/5 17/14
wrongness [1]   35/3

**Y**

Yahoo [2]   59/24 60/13
yeah [14]   10/20 10/22 11/6
 20/22 21/6 21/6 23/23 25/11
 25/11 26/3 27/1 35/1 36/18
 40/14
year [8]   23/14 25/3 31/18 33/24
 37/22 46/10 56/13 56/24
years [5]   33/24 40/2 40/7 40/8
 54/2
yes [58]   7/23 8/13 8/18 9/9
 12/6 14/24 15/15 15/18 15/21
 17/6 18/2 18/4 18/4 19/25 20/2
 20/7 20/16 21/1 21/19 21/22
 24/15 24/16 24/24 24/25 24/25
 26/14 28/6 30/22 31/1 32/11
 32/17 32/22 33/1 33/9 33/14
 33/22 33/25 34/8 34/14 34/19
 35/22 36/5 37/7 38/17 38/21
 39/5 39/8 50/3 50/15 52/15
 52/16 56/11 56/23 57/25 59/2
 59/24 60/10 60/12
yet [1]   5/1
you [277]
you'd [1]   43/6
you'll [1]   28/24
you're [18]   13/3 15/6 17/17
 21/17 21/21 23/8 23/16 24/9
 26/3 27/9 34/21 34/21 36/14
 38/5 38/15 51/13 52/22 52/25
you've [11]   11/12 11/15 13/15
 15/11 28/21 28/21 33/7 41/22
 42/9 48/20 59/3
young [2]   16/15 36/13
younger [4]   28/5 28/14 40/3
 41/16
your [101]
Your Honor [32]   2/6 2/14 2/22
 2/24 3/15 4/18 5/10 7/2 7/15
 7/17 11/22 12/5 12/16 13/6
 13/19 14/17 19/7 29/1 30/3
 45/18 47/5 48/4 48/7 48/11 56/1
 56/2 58/8 58/10 58/23 59/14
 61/5 61/7

**Z**

Zachary [2]   1/15 2/10
Zachary Myers [2]   1/15 2/10
Zweizig [3]   1/23 61/14 61/18